

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-2002

# Anderson v. Consolidated Rail

Precedential or Non-Precedential: Precedential

Docket No. 01-1518

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Anderson v. Consolidated Rail" (2002). *2002 Decisions.* Paper 424.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/424

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 23, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1518

WAYNE S. ANDERSON; WILLIAM R. BELLAMY; LINDA A.
BONNER; ROBERT R. CARTER; ROBERT J. DEANGELIS;
PATRICIA FOSTER; **CHARLES F. FOTE; ALVERTA T.
GILMORE; JAMES J. GOSLIN; WILLIAM J. GUITERAS;
*JANE L. HAMILTON; *DONALD A. HEPP; JOHN
JEFFERY; FRANK S. JOHNSON; WILLIAM A. KENNEDY;
THERESA R. KENNY; THOMAS H. KERWIN; *LEE A.
MANFRE; *IRENE W. MAYER; *EILEEN F. MCGOVERN;
JANET E. MCMULLAN; CARL F. MICHINI; THOMAS J.
QUINN; *PAUL C. RAHN; *FREDERICK G. SCHMIDT;
*GARY A. SMELCER; *BERNARD B. SOBJAK; *DAVID I.
SPRITZLER; VERA M. STEVENS; *GEORGE D. WOOD,
        Appellants

v.

CONSOLIDATED RAIL CORPORATION ("CONRAIL");
CONRAIL SUPPLEMENTAL PENSION PLAN; FRANK H.
NICHOLS; DEBBIE MELNYK; RICK HUFFMAN; MARIANNE
S. GREGORY; DALE SCHAUB; JOSEPH ARSENAULT;
PETER F. BARR; BRIAN DEAM; JAMES F. DIETZ; TOM
DWYER; M. KEVANS; JACK FARRELL; GERALD T.
GATES; MARY ANN GREGROY; TOM HIEBER; CHRIS
HILL; LIBBY HUDSON; DAVE KALAPOS; BILL LYNCH;
DON MATTSON; MICHAEL MCGILLOWAY; TOM
NEWHART; MICHELE NOWLAN; JOSEPH OSBORNE;
DENNIS PARANZINO; LES PASSA; AL POLINSKY; ROBERT
REID; MICKEY SAPPERSTONE; BOB SCHREYER; CARL
SIMCOX; JAMES SNEE; JERRY STANECK; JOHN TILLEY;
RALPH VON DEM HAGEN
*(Dismissed per Court's Order dated 4/11/01)
**(Dismissed per Court's Order dated 2/14/02)

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 98-cv-06043
District Judge: Honorable Harvey Bartle, III

(Argued: March 4, 2002)

Before: SCIRICA, ROSENN, Circuit Judges, and
WARD,* District Judge.

(Filed: July 23, 2002)

        Alice W. Ballard, Esq. (Argued)
        Law Office of Alice W. Ballard, PC
        225 South 15th Street, Suite 1700

Philadelphia, PA 19102
Counsel for Appellants

Laurence Z. Shiekman, Esq.
(Argued)
Brian T. Ortelere, Esq.
Joann Hyle, Esq.
Larry R. Wood, Jr., Esq.
Hope A. Comisky, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Counsel for Appellees

OPINION OF THE COURT

ROSENN, Circuit Judge:

This age discrimination in employment case has its genesis in the lengthy struggle of our nation's railroads for survival. Consolidated Railroad Corporation (Conrail), now

_____

* Honorable Robert J. Ward, United States District Court for the Southern District of New York, Sitting by Designation.

defunct, engaged in a reduction-in-force (RIF) in July 1995 when it involuntarily terminated thirty employees in its Central Office. In November 1998, these employees, all but one in the forty to fifty-five year age range, sued Conrail in the United States District Court for the Eastern District of Pennsylvania. They claimed that Conrail's decision to terminate them violated the Age Discrimination in Employment Act, 29 U.S.C. SS 621-634 (ADEA). Examining each individual plaintiff 's prima facie case, the District Court found that certain plaintiffs had not satisfied the fourth element of the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) because they could not show that Conrail retained a sufficiently younger and similarly situated employee for each employee terminated. The plaintiffs also claim that the District Court erred in rejecting their claims for pension benefits under ERISA S 510, 29 U.S.C. S 1140, and their claims for benefits under the Company's Voluntary Separation Program (VSP) of 1996. Seventeen of the plaintiffs timely appealed.1 We affirm.

I.

As part of its RIF decision, Conrail provided the terminated employees with severance pay amounting to approximately a year's salary per employee. In February 1996, Conrail announced a voluntary separation program or a buy-out which provided separation incentives to qualified employees that were more generous than the severance package offered to the involuntarily terminated

plaintiffs. The 1996 benefits included payment of two years salary and an additional $5,000 expense allowance. As initially announced, the VSP benefits were available to those individuals who were employees as of February 21, 1996. Later, Conrail expanded the program to individuals who were employees as of January 2, 1996. In addition to the eligibility cut-off date, an employee had to have fifteen or more years of continuous work service to be eligible. In December 1996, Conrail amended its Supplemental Pension

---

1. Thirteen plaintiffs resolved their claims against Conrail and have not appealed.

3

Plan to include the VSP. Conrail denied the involuntary terminated employees the VSP benefits at each level of the administrative claims procedure.

In November 1998, the thirty plaintiffs who had been involuntarily terminated in July 1995 filed this action.2 They claimed that the decision by Conrail to reduce its aging work force "was motivated by a desire to thin its middle-aged ranks" to make room for younger new hires in violation of the Age Discrimination in Employment Act. They also claimed that Conrail terminated the plaintiffs in violation of ERISA S 510, 29 U.S.C. S 1140, to preclude them from participating in an anticipated voluntary buy-out program that Conrail subsequently announced in 1996.

The District Court dismissed plaintiffs' ERISA claims on Conrail's Rule 12(b)(6) motion. The Court applied Pennsylvania's two-year statute of limitations for tort cases to the ERISA S 510 claim, concluding that the claims were time barred. The District Court granted Conrail's summary judgment motion on the ADEA claims in part and denied them in part. The District Court found that the plaintiffs' reliance on Anjelino v. New York Times Co., 200 F.3d 73 (3d Cir. 1999) was not relevant to their ADEA claim. The District Court found that certain plaintiffs had not satisfied the fourth element required to make out a prima facie case, namely, proof that a similarly situated younger person was retained or hired to fill the position of the employee terminated. Of the fourteen plaintiffs that survived summary judgment, eleven settled. Gilmore, Fote and DeAngelis proceeded to trial separately pursuant to the District Court's order.3 The jury returned a verdict in favor of Gilmore and against Fote and DeAngelis. The District Court denied both parties' post-trial motions in January 2001.4

---

2. The District Court exercised subject matter jurisdiction under 28 U.S.C. S 1331. This Court has appellate jurisdiction pursuant to 28 U.S.C. S 1291.
3. Although the District Court granted Conrail's motion for separate trials under Federal Rule of Civil Procedure 42(b), it denied the motion to sever the cases under Rule 21.

4. Of the original thirty plaintiffs, thirteen plaintiffs have settled all their claims, including Gilmore and Fote. Of the remaining seventeen, all of

II.

A.

Our review of the District Court's grant of summary judgment is plenary, and we apply the same test as the District Court should have applied initially. Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Summary judgment is proper if after considering"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In conducting that review, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986). However, in deciding a summary judgment motion, we are obligated to "view the evidence . . . through the prism of the substantive evidentiary burden" and determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." Anderson, 477 U.S. at 254.

Summary judgment against a party who bears the burden of proof at trial, as do the plaintiffs here, is proper if after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under such circumstances, "there can be no genuine issue

_____

them challenge the ERISA decision. Fourteen plaintiffs challenge the Anjelino decision, while only ten challenge the District Court's disposition of their prima facie case. Because our decision does not turn on any facts particular to any individual plaintiff, we need not detail which specific plaintiffs challenge what aspect of the District Court's decision.

as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323 (internal quotations omitted). Further, "[t]he moving party is entitled to a judgment as a matter of law because

the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

B.

Under the Age Discrimination in Employment Act, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. S 623(a)(1). A plaintiff may establish an age discrimination claim using direct or indirect evidence. The plaintiffs claim that they established a prima facie case sufficient to defeat a motion for summary judgment by asserting that Conrail's terminations were to make room for younger new employees and by showing that its proffered reason of the need for immediate cost savings was pretextual. They argue that under their Anjelino theory they need to produce evidence "only that they lost their jobs as a result of age discrimination, regardless of their individual circumstances," to bar summary judgment. The plaintiffs argue that each of them need not individually establish a prima facie case under the McDonnell Douglas framework. Relying on Anjelino, 200 F.3d at 92, they claim entitlement to relief because each of them suffered as a result of Conrail's impermissible decision to apply the 1995 RIF on the basis of age.

In Anjelino, this Court addressed whether certain male workers had standing under Article III to sue under the sex discrimination laws, where the employer aimed the alleged discrimination at female co-workers. We held:

> Because the male appellants here have pled specific facts to demonstrate a concrete injury as well as a nexus between the alleged injury and the sex-based discrimination, even though that discrimination was

6

> aimed in the first instance at others, we conclude that they have established standing. Their allegations that sex discrimination adversely affected their being hired as extras, as well as their seniority on the priority list, demonstrate actual injury. We hold that indirect victims of sex-based discrimination have standing to assert claims under Title VII if they allege colorable claims of injury-in-fact that are fairly traceable to acts or omissions by defendants that are unlawful under the statute. That the injury at issue is characterized as indirect is immaterial, as long as it is traceable to the defendant's unlawful acts or omissions.

Anjelino, 200 F.3d at 92.

In addition to an effort to produce direct evidence of age discrimination that the District Court rejected for many reasons,5 the plaintiffs claim that each was indirectly

injured by Conrail's age-based RIF decision, an alleged unlawful act under ADEA. The District Court, however, found Anjelino irrelevant because, as it explained, the plaintiffs offered no proof that they were harmed indirectly by an age based RIF decision "directed at others." (D.C. op. at 12). We agree with the District Court that the plaintiffs' reliance on Anjelino is irrelevant. We also conclude that their dependence on Anjelino is misplaced because even if Anjelino relieved each plaintiff from individually satisfying a prima facie case under the McDonnell Douglas framework, it would not relieve the plaintiffs from showing that the terminations "are fairly traceable to acts or omissions by defendants that are unlawful under the statute." Id. Stated differently, Anjelino does not relieve the plaintiffs from establishing that the RIF decision was unlawful under ADEA.

The plaintiffs claim that as a result of Conrail's prior downsizing and two prior retirement buyouts, Conrail's workforce was predominately middle age. This, the plaintiffs claim, "boded badly for Conrail's future, because the flow

_____

5. The District Court rejected the "purported direct evidence" because it presented "myriad" problems. (D.C. op. at 6)."None of the evidence cited by the plaintiffs bears directly upon Conrail's reasons for implementing the June 1995 RIF." Id.

through the pipeline of upcoming leaders was down to a trickle." In addition, the plaintiffs rely on certain anecdotal evidence from a Human Asset Planning Team reflecting concern about Conrail's aging workforce.

In Connors v. Chrysler Financial Corp., we recognized that a plaintiff can prove discrimination by direct evidence, but noted that a plaintiff confronts a "high hurdle." 160 F.3d 971, 976 (3d Cir. 1998). In quoting Justice O'Connor's controlling opinion in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), we held that the evidence must demonstrate that the "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Connors, 160 F.3d at 976. In other words, the evidence must reveal a sufficient discriminatory animus making it unnecessary to rely on any presumption from the prima facie case to shift the burden of production. Id.

When reviewing a grant of summary judgment, we must view the evidence in the light most favorable to the non-movants, here the plaintiffs. We cannot say that a reasonable fact-finder would find that plaintiffs' generalized evidence relating to Conrail's aging workforce established that its 1995 decision to institute a reduction in force was illegitimately contrived on the basis of age. Even were we to consider the evidence of the 1996 VSP, which the plaintiffs claim the District Court erroneously rejected, as inferential proof of Conrail's concern with its aging workforce, it has not much probative value from which to draw a sinister

motive behind the 1995 RIF decision. The plaintiffs failed to produce sufficient evidence to reveal a discriminatory animus in making the 1995 RIF decision.

Moreover, as the District Court carefully observed, none of the evidence adduced by the plaintiffs addresses directly the reasons for implementing the 1995 RIF, nor does any of the evidence show that any decision maker relied on such evidence. Having failed to show that the RIF decision was age based, the District Court correctly found Anjelino irrelevant here.

C.

We turn now to the plaintiffs' indirect evidence of age discrimination. In indirect evidence cases, we have

borrowed the three-step McDonnell Douglas burden shifting analysis developed in the context of Title VII discrimination cases and applied a "slightly modified version" to determine whether the employer based its action on the individual's age. Connors, 160 F.3d at 973; 29 U.S.C.S 623(a)(1). Under the first step of the three-step analysis, a plaintiff must establish a prima facie case showing that he or she:

> (1) was a member of a protected class (i.e. he or she was forty years of age or older);

> (2) was qualified for the position at issue;

> (3) suffered an adverse employment action; and

> (4) was replaced by a sufficiently younger person, raising an inference of age discrimination.

Showalter v. University of Pittsburgh Med. Ctr. , 190 F.3d 231, 234 (3d Cir. 1999); Connors, 160 F.3d at 973-74. Recognizing that the fourth element is inadequate in a reduction in force context, as opposed to demotion or discharge cases, we have held that the fourth element is satisfied by showing that the employer retained a "sufficiently younger" employee. Showalter , 190 F.3d at 235.

The District Court also held that to satisfy the fourth element of the prima facie case, the plaintiffs must show that the sufficiently younger person retained was "similarly situated." None of the cases that the District Court cited, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231 (3d Cir. 1999), and Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639 (3d Cir. 1998), explicitly holds that a plaintiff, in a RIF age discrimination case, must demonstrate, as part of his or her prima facie case, that "the defendant retained someone who was similarly situated." Before proceeding to the plaintiffs' claim of error here, we must therefore determine whether the

District Court erred in imposing this requirement as part of the prima facie case.

Relying on Earley v. Champion International Corp., 907 F.2d 1077 (11th Cir. 1990) and Skalka v. Fernald Environmental Restoration Management, 178 F.3d 414 (6th

Cir. 1999), the District Court reasoned that because ADEA is not a bumping statute, the plaintiffs must also show that the employer retained a similarly situated individual. In Earley, the United States Court of Appeals for the Eleventh Circuit stated that ADEA does not require an employer to discharge a younger employee so that an employee in the ADEA protected class can be retained. 907 F.2d at 1083. Likewise, the United States Court of Appeals for the Sixth Circuit observed in Skalka that a "plaintiff cannot prevail merely by pointing to other positions for which she was qualified and claim[ ] that the employer should have allowed her to 'bump' the occupant of that position." 178 F.3d at 421.

Because ADEA is not a bumping statute, as the plaintiffs concede, the plaintiffs must show that the employer retained a similarly situated employee. Were we to hold otherwise, we would be construing ADEA as guaranteeing a protected employee a job at the expense of a sufficiently younger employee. Thus, to present a prima facie case raising an inference of age discrimination in a reduction in force situation, the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger.

Of the seventeen plaintiffs on appeal here, the District Court granted summary judgment against ten of them because it concluded that they had failed to establish that Conrail retained someone who was similarly situated, and thus, raise an inference of age discrimination. The plaintiffs attempt to demonstrate a similarly situated retained individual by comparing themselves to other employees who performed jobs for which they were also qualified. They reason that because "shuffling employees is the norm, plaintiffs should be able to challenge as discriminatory Conrail's failure to shuffle them to an assignment where they could outperform a less experienced incumbent." If Conrail engaged in routine shuffling, we agree with the plaintiffs that such a practice should have been considered in determining whether a younger person was similarly situated to a discharged employee. However, that is not the case here. The plaintiffs adduced minimal evidence showing that inter-department assignments of employees was the

norm. On the contrary, at oral argument, the plaintiffs retreated and acknowledged that they only attempted to show a similarly situated retained employee by comparing

each plaintiff to someone within their own department or sub-department.

Our review of the District Court's well-reasoned analysis of the ten plaintiffs' cases who appeal this aspect of the District Court decision (Anderson, Bellamy, Bonner, Foster, Goslin, Guiteras, Jeffery, Kennedy, McMullan, and Quinn) contradicts the plaintiffs' submission. As to each of these ten plaintiffs, they attempted to satisfy the fourth element by comparing themselves to entry-level positions or other low-level positions without providing any evidence of shuffling. To the extent that a particular plaintiff referred to someone in his department or sub-department, the District Court rejected such evidence because the employees retained were either not sufficiently younger or the evidence failed to show that the duties were comparable or that they were otherwise similarly situated. We therefore conclude that the District Court did not err in finding the foregoing ten plaintiffs failed to satisfy the fourth element of a prima facie case.

D.

After surviving summary judgment, DeAngelis proceeded to trial. The jury returned a verdict against him. He claims error in the District Court's jury instructions. DeAngelis argues that the District Court erred in instructing the jury to find for Conrail, if they were not persuaded that DeAngelis had presented a prima facie case under the McDonnell Douglas framework. DeAngelis does not explain how, even if the instructions were erroneous, they were prejudicial. In any case, we have stated that "it is clearly proper to instruct the jury that it may consider whether the factual predicates necessary to establish the prima facie case have been shown." Watson v. Southeastern Pennsylvania Transp. Auth., 207 F.3d 207, 221 (3d Cir. 2000). This is what the District Court did. As the Court noted in rejecting DeAngelis' argument in his post-trial motion, "while the jury was instructed to consider the 'factual predicates' of the prima facie case, the term 'prima

11

facie' was not used, thus eliminating any unnecessary jury confusion." In addition to failing to discover any prejudice, we see no error in the jury instructions.

III.

Besides the ADEA claim, the plaintiffs pled a claim against Conrail under ERISA S 510, 29 U.S.C.S 1140. They alleged that they were discharged in July 1995 to prevent attainment of the 1996 VSP benefits. On Conrail's Rule 12(b)(6) motion, the District Court held that the ERISA S 510 claim was time barred because the applicable statute of limitations is two years. Our review is plenary over the District Court's dismissal for failure to state a claim pursuant to Rule 12(b)(6). Brown v. Philip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001).

The parties agree that the plaintiffs were involuntarily terminated in July 1995. It also is undisputed that the plaintiffs did not file their action until November 1998, almost three and half years later. Therefore, whether the two year statute of limitations or the six year advanced by the plaintiffs applies is critical and dispositive of the S 510 claim. The plaintiffs also do not dispute on appeal that their S 510 claim accrued in July 1995 when they were terminated.

In Gavalik v. Continental Can Co., this Court held that because S 510 does not provide a specific statute of limitations for actions alleging violations of that section, "the appropriate period is determined by reference to the state statute of limitations governing cases most analogous to the cause of actions asserted by the plaintiffs." 812 F.2d 834, 843 (3d Cir. 1987). We held that employment discrimination and wrongful discharge claims brought under federal law "are governed by Pennsylvania's six-year residuary clause." Id. at 844.

The District Court in this case concluded that the plaintiffs S 510 claim here is most analogous to a wrongful discharge cause of action because the plaintiffs' allegations are that they would have qualified if not for the wrongful termination to preclude them from the 1996 VSP. The District Court acknowledged that in Gavalik, this Court

12

stated that Pennsylvania's six year statute of limitations applied to employment discrimination or wrongful discharge cause of action in S 510 claims. However, the District Court held that since the decision in Raleigh v. Westinghouse Electric Corp., 550 A.2d 1013, 1014 (Pa. Super. 1988), appeal denied, 563 A.2d 499 (Pa. 1989), Pennsylvania has applied a two year statute of limitations in wrongful discharge causes of action. Therefore, it held that a S 510 claim analogous to a wrongful discharge cause of action is governed by the two year statute of limitations set forth in 42 Pa. Cons. Stat. Ann. S 5524(7).

The plaintiffs do not dispute that the most analogous cause of action asserted by them in their S 510 claim is a wrongful discharge cause of action. They also do not dispute that after Raleigh, a two year statute of limitations applies in Pennsylvania in a wrongful discharge cause of action. They contend, however, that because Gavalik analogized a S 510 claim to an employment discrimination cause of action, the six year statute of limitations enunciated in Gavalik should apply. The applicable statute of limitations for employment discrimination is irrelevant here because the District Court determined, a determination that is not challenged by the plaintiffs, that their ERISA S 510 claim is most analogous to a wrongful discharge.

Next, the plaintiffs submit that it was reasonable for

them to rely on the six-year statute of limitations enunciated in Gavalik. However, the Gavalik court made clear that the statute of limitations for an ERISAS 510 claim is governed by cases "most analogous to the cause of action asserted by the plaintiffs." Because Raleigh held in 1988 that a two year statute of limitations applies to wrongful discharges in Pennsylvania, and the District Court found that the plaintiffs' S 510 claim here is most analogous to a wrongful discharge, the District Court did not err in holding that the two year statute of limitations is applicable to the plaintiffs' S 510 claim. As the plaintiffs' claims accrued in July 1995, and they did not file the instant action until November 1998, their S 510 claims are time barred.

13

The plaintiffs also alleged that they were entitled to the VSP benefits under ERISA S 502(a)(1)(B), 29 U.S.C. S 1132(a)(1)(B), and ERISA S 502(a)(3), 29 U.S.C. S 1132(a)(3), although they did not satisfy the eligibility cut-off date. The essence of their contention here is that Conrail breached its fiduciary duty in extending the VSP benefits to certain ex-employees terminated in January 1996, without providing the same benefits to the employees terminated in 1995. The plaintiffs vehemently argue that Conrail's decision to expand the program to employees involuntarily terminated as of January 2, 1996, but not to them, was a breach of its fiduciary duty.

In Bennett v. Conrail Matched Savings Plan Administrative Committee, we made clear that ERISA imposes a fiduciary duty in the administration of a plan, but not when it acts as a plan sponsor. 168 F.3d 671, 679 (3d Cir. 1999). In amending a plan, an employer has broad authority and acts as a settlor, not a fiduciary. Id. Therefore, we held that "as long as an amendment does not violate a specific provision of ERISA, 'the act of amending a pension plan does not trigger ERISA's fiduciary provisions.' " Id. (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999)). Thus, Conrail's amendment to the Plan in December 1996 to include those terminated in early January, and thereby extend the VSP benefits to include more employees than originally announced in February 1996, implicated no ERISA fiduciary obligations because Conrail acted as a settlor.

As to the plaintiffs' cause of action to recover benefits due under the terms of the plan under ERISA S 502(a)(1)(B), 29 U.S.C. S 1132(a)(1)(B), the plaintiffs acknowledge that they do not satisfy the eligibility cut-off date, January 2, 1996. Thus, the plaintiffs are entitled to no benefits under the Plan. Hein v. FDIC, 88 F.3d 210, 215 (3d Cir. 1996) (stating that only the Plan creates entitlement to benefits and thus, "we are required to enforce the Plan as written unless we can find a provision of ERISA that contains a contrary directive") (quoting Dade v. North Am. Philips Corp., 68 F.3d 1558, 1562 (3d Cir. 1995)).

IV.

Summarizing, the plaintiffs have not shown that the 1995 RIF decision was age based, and therefore, Anjelino is inapplicable. The District Court did not err in requiring the plaintiffs to show, as part of their prima facie case, the fourth element required in a reduction in force age discrimination case. They failed to prove that retained employees were similarly situated, as to create an inference of age discrimination. The District Court also properly dismissed all of the ERISA claims. As to DeAngelis' claim of error in the jury instructions in his trial, we perceive none. Thus, the orders and summary judgment of the District Court will be affirmed in their entirety. Each side to bear its own costs.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit