

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-9-2007

# Espinosa v. Union

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4278

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Espinosa v. Union" (2007). *2007 Decisions.* Paper 1800.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1800

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-4278, 05-4382

———

JUAN C. ESPINOSA;
MAUREEN ROIG-ESPINOSA, his wife,

*Appellants in No. 05-4278*

v.

COUNTY OF UNION; STATE OF NEW JERSEY; POLICEMEN'S BENEVOLENT
ASSOCIATION UNION COUNTY CORRECTIONS OFFICERS LOCAL #199, INC.;
JOHN DOES 1-25 (fictitious names intending to designate currently
unknown entities and persons, individually and in their official
capacities; COUNTY OF UNION BOARD OF CHOSEN FREEHOLDERS;
UNION COUNTY PROSECUTOR'S OFFICE; JAMES J. DURKIN, individually and
in his official capacity; THEODORE J. ROMANKOW, UNION COUNTY
PROSECUTOR in his official capacity, and his predecessors
and successors also known as THEODORE J. ROMANLOW; THOMAS K.
ISENHOUR, individually and in his official capacity;
DIRECTOR JAMES E. COLEMAN; JAMES F. DOUGHERTY, JR.;
HAROLD GIBSON; MICHAEL J. LAPOLLA

County of Union and County of Union
Board of Chosen Freeholders,

*Appellants in No. 05-4382*

———

On Appeal from the United States District Court
for the District of New Jersey
(Case No. 01-cv-03655)
District Court Judge: Honorable William J. Martini

———

Argued December 12, 2006

Before: FUENTES and VAN ANTWERPEN, *Circuit Judges*, and PADOVA,*
*District Judge*

(Filed January 9, 2007)

Thomas D. Shea, Jr. (Argued)
384 Starling Drive
Bozeman, MT 59718

Arthur L. Raynes
Wiley, Malehorn & Sirota
250 Madison Avenue
Morristown, NJ 07960

    *Counsel for Appellants/Cross-Appellees*

Kathryn V. Hatfield (Argued)
Schenck, Price, Smith & King LLP
10 Washington Street
P.O. Box 0905
Morristown, NJ 07963

    *Counsel for Appellees/Cross-Appellants*

Thomas C. Bigosinski
McElroy, Deutsch, Mulvaney & Carpenter
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

    *Counsel for Appellee Michael Lapolla*

_____

* The Honorable John R. Padova, District Judge of the Eastern District of Pennsylvania, sitting by designation.

2

Paul Daly
Hardin, Kundla, McKeon & Poletto
673 Morris Avenue
P.O. Box 730
Springfield, NJ 07081

   *Counsel for Appellee Union County Prosecutor's Office*

Nia H. Gill
Gill & Cohen
42 Church Street
Montclair, NJ 07042

   *Counsel for Appellee Thomas K. Isenhour*

————

OPINION OF THE COURT

————

VAN ANTWERPEN, Circuit Judge.

   Appellant Juan C. Espinosa brought various federal and New Jersey state law claims against his employer, Union County, alleging wrongful termination. Espinosa appeals a grant of summary judgment in favor of Union County and the denial of his Motion to Stay the Parties' Pending Cross-Motions for Summary Judgment. Union County and its Board of Chosen Freeholders appeal a grant of summary judgment in favor of Espinosa with respect to two cross-claims. For the reasons set forth below, we affirm the District Court in all respects.

I.

*A. Background*

   Because we write solely for the parties, we set forth only those facts necessary to

our analysis.

Juan C. Espinosa[1] was a corrections officer in the Union County Jail ("the Jail"). On June 18, 1995, Espinosa witnessed 25 to 30 fellow corrections officers beat, harass, and abuse Immigration and Naturalization Service ("INS") detainees who arrived at the Jail from the Esmor Federal Detention Facility.

In July 1995, after being approached by the Union County Prosecutor's Office, Espinosa agreed to assist in prosecuting those involved in the incident. Specifically, Espinosa helped prosecutors by wearing a recording device inside the Jail, obtaining documents from the Jail, and permitting the recording of all phone calls to Espinosa's residence. Espinosa also served as a witness for county prosecutors in front of grand juries and at various officers' trials.

In October 1995, after Espinosa had gathered evidence at the Jail and testified in front of a grand jury, the Prosecutor's Office acknowledged that it would be too dangerous for Espinosa to continue to work inside the Jail because of a "long history of intimidation and retaliation against corrections officers in the Union County Jail who provide information with regard to the conduct of fellow corrections officers." App. at A1541. Accordingly, the Prosecutor's Office permitted Espinosa to leave his job at the Jail, and, in exchange for his continued assistance, promised him the following: First, the

---

[1]Espinosa's wife, Maureen Roig-Espinosa, is a co-plaintiff in this suit. For the sake of simplicity, however, we exclusively reference Mr. Espinosa as the plaintiff in our opinion.

County would continue to pay Espinosa his salary until the conclusion of the officers' trials. Second, the Prosecutor's Office would assist him in securing employment in the field of law enforcement in Florida by acting as a reference for Espinosa and contacting senior officials there. Finally, the County would pay Espinosa up to $15,000 to cover any relocation expenses that he incurred in moving to Florida. These promises were memorialized in a letter sent by Acting Prosecutor Edward M. Neafsey to Espinosa's attorney on October 16, 1995. Espinosa claims that additional oral promises regarding continued employment with the County accompanied this letter. The County and the Prosecutor's Office, however, dispute this claim.

After receiving the "Neafsey letter," Espinosa continued to help prosecutors and continued to be paid by the County. He testified in front of another grand jury in December 1995, reviewed transcripts, and testified at two criminal trials in January and March 1998. In May 1998, those convicted in connection with the incident at the Jail were sentenced and the County Prosecutor's Office no longer needed Espinosa's assistance.

After the trials concluded, the County continued to pay Espinosa and provide him with health benefits. Espinosa remained in contact with County officials about various personnel issues, searched for a job in law enforcement, and worked full time as a security guard (for a company that began employing him in September 1996). In July 1998, Espinosa met with County officials to review his personnel file. In September 1998, Espinosa contacted Union County Manager Michael L. Lapolla to ask for a letter of

5

recommendation, which Lapolla claims he sent.

On February 12, 1999, Espinosa accepted a job offer from the Atlanta Police Department. Two days later, on February 17, 1999, Espinosa's attorney sent a letter to Lapolla requesting a meeting, and on March 26, 1999, Espinosa and Lapolla met. The two men discussed potential job opportunities in Union County, issues surrounding Espinosa's pension, and Espinosa's concerns about accepting a job in Atlanta that paid less than he was currently receiving from Union County. At no time during this meeting did Lapolla guarantee Espinosa another position with the County.

At the time of the meeting, Lapolla knew Espinosa was still on the County's payroll. After their meeting, Lapolla claims he called the County's Director of Administrative Services and inquired as to why Espinosa was still being paid. Based on his conversation with the director, Lapolla assumed that Espinosa would shortly be taken off the County's payroll.

In August 2000, Lapolla discovered that Espinosa had not been taken off the payroll. On August 2, 2000, the County sent Espinosa a letter asking him to return to his position or resign. On August 11, 2000, Espinosa sent a letter to the County stating that he would neither report to the Jail nor resign. On August 14, 2000, the County placed Espinosa on leave without pay, continuing to provide Espinosa with health insurance.

On January 8, 2001, pursuant to New Jersey's Civil Service Act, Espinosa

6

received a Preliminary Notice of Disciplinary Action from the County.[2] In response to this notice, Espinosa immediately sent a letter to the County requesting "a comparable position outside of the County Corrections Department." App. at A1614. Espinosa did not receive a reply to this letter. On January 19, 2001, the County held a disciplinary hearing at which Espinosa, represented by an attorney, argued that he could not return to the Jail out of concern for his own safety. The hearing officer rendered an opinion on March 27, 2001 and found that Espinosa had abandoned his job. Accordingly, the County terminated Espinosa from his position and stopped providing him health insurance.

After the hearing, the County placed a Final Notice of Disciplinary Action in Espinosa's personnel file. The notice indicated Espinosa had been terminated for the following reasons: (1) failure to perform duties, (2) insubordination, (3) inability to perform duties, (4) neglect of duties, (5) conduct unbecoming a public employee, and (6) abandonment of position. In actuality, Espinosa had only been terminated for abandonment of his position. Espinosa received a copy of this notice around the end of March and immediately objected to the inclusion of the first five charges. County personnel promised to correct the form but did not do so until July 8, 2002, after repeated requests from Espinosa.

*B. Procedural History*

---

[2]The County claims that it delayed commencing disciplinary action (from August to January) in the hope that Espinosa would resign during this time.

On August 2, 2001, Espinosa filed a twelve-count complaint in the United States District Court against Union County, the Union County Prosecutor's Office, the Policemen's Benevolent Association, and the Board of Chosen Freeholders of the County of Union. The complaint included two claims under 42 U.S.C. § 1983, one for violation of Espinosa's procedural due process rights and one for retaliation in violation of the First Amendment. He also asserted a retaliation claim under the New Jersey Conscientious Employee Protection Act ("CEPA") and the following state law claims: breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and tortious interference with prospective economic advantage.[3] The County and its co-defendants moved for summary judgment on all of Espinosa's claims and the District Court granted this motion.

The County and its co-defendants asserted counterclaims against Espinosa for breach of the implied covenant of good faith and fair dealing and unjust enrichment.[4] Espinosa moved for summary judgment on these claims and the District Court granted his motion.

---

[3]Espinosa also brought a variety of other claims, including a substantive due process claim under § 1983, a claim for aiding and abetting a violation of the Conscientious Employee Protection Act, and claims for constructive discharge, a state constitutional tort, intentional infliction of emotional distress, and defamation. The District Court granted summary judgment to the County with respect to these other claims and Espinosa does not raise any of them on appeal.

[4]The County also brought a conversion claim against Espinosa. The District Court granted Espinosa's summary judgment motion as to this claim and the County does not appeal its ruling.

Espinosa and the County and its co-defendants appeal the District Court's grants of summary judgment. Espinosa also appeals the District Court's denial of a motion under Federal Rule of Civil Procedure 56(f) by which he sought to introduce additional evidence of the culture of retaliation inside the Jail.

## II.

The District Court had subject matter jurisdiction of Espinosa's claims under 42 U.S.C. §§ 1983 and 1988 pursuant to 28 U.S.C. §§ 1331 and 1343. The District Court had subject matter jurisdiction over Espinosa's state law claims pursuant to diversity and supplemental jurisdiction under 28 U.S.C. §§ 1332 and 1367. We have jurisdiction to review the District Courts' grant of summary judgment and its decision to deny Espinosa's Rule 56(f) motion under 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is plenary. *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 246 (3d Cir. 2002) (citation omitted). Accordingly, "we apply the same test as the District Court should have applied initially." *Id*. That is, we will affirm the District Court's grant of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law*." Fed. R. Civ. P. 56(c) (emphasis added). In our review, we consider the facts and any inferences that follow from them in the light most favorable to the non-moving party and we determine "whether a jury could reasonably find either that the plaintiff proved his case by the

9

quality and quantity of the evidence required by the governing law or that he did not."
*Anderson*, 297 F.3d at 247 (internal quotation omitted).

"Summary judgment against a party who bears the burden of proof at trial . . . is proper . . . [only if that party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson*, 297 F.3d at 247 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). In this situation, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (internal quotations omitted).

We review Espinosa's challenge to the District Court's denial of his Rule 56(f) motion for abuse of discretion. *See Couden v. Duffy*, 446 F.3d 483, 500 n.12 (3d Cir. 2006) (citation omitted). "An abuse of discretion occurs when a district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Knight v. Int'l Longshoremen's Ass'n.*, 457 F.3d 331, 337 (3d Cir. 2006) (internal quotation and citation omitted).

III.

*A. Retaliatory Discharge*

Espinosa claims the County terminated him in retaliation for testifying against fellow corrections officers in 1998 and for expressing his concerns about the Jail's unsafe working environment in 2000. This retaliation, he asserts, violated his rights under the

10

First Amendment and New Jersey's CEPA. Union County denies terminating Espinosa for his expression and asserts that Espinosa was fired for abandoning his job. Because Espinosa did not produce sufficient evidence to establish a causal connection between his expression and his termination, we find he failed to establish an essential element of his case. Accordingly, we affirm the District Court's grant of summary judgment with respect to Espinosa's retaliation claims.[5]

*1. First Amendment*

Determining whether a public employee's expressions are entitled to protection under the First Amendment involves a three-part test derived from the Supreme Court's decisions in *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), and *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005). We have held that an employee challenging retaliatory activity must show (1) his expression addressed a matter of public concern, (2) his interest in the expression outweighed the state's countervailing interest as an employer, and (3) his expression was a "substantial or motivating factor" in the alleged retaliatory action. *Id*. In addition, the Supreme Court, in a recent case, has held that the public employee must also be speaking as a citizen and not pursuant to his official duties. *Garcetti v. Ceballos*, — U.S. —, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689

_____

[5]Because we can dispose of all of Espinosa's claims for failure to show causation, we need not decide whether Espinosa's refusal to return to the Jail because of its unsafe condition is expression protected under the First Amendment or CEPA.

11

(2006); *see also Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006) (explaining, in the wake of *Ceballos*, "the issue is not only whether the speech in question addresses a matter of public concern, but also whether it is made as a citizen"). Generally, the first and second parts of the test involve questions of law for the court and the third part of the test involves a question of fact for the jury. *McGreevy*, 413 F.3d at 364. Despite this general rule, summary judgment may be appropriate when a claim turns solely on the causation part of the test because "only genuine questions of fact should be determined by the jury." *Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005).

*2. Conscientious Employee Protection Act*

New Jersey's CEPA forbids employers from retaliating against an employee who does any of the following:

> b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship...; or
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:…(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. § 34:19-3.

New Jersey courts have created a four-part test for evaluating CEPA claims that is very similar to the three-part test for First Amendment retaliation claims. *Caver v. City of Trenton*, 420 F3d 243, 254 (3d Cir. 2005). An employee seeking protection under CEPA

12

must show (1) his employer was engaged in conduct that was either unlawful or in violation of a clear mandate of public policy, (2) he performed a "whistle-blowing" activity to alert others of the improper conduct, (3) he suffered an adverse employment action, and (4) "a causal connection exists between the whistle-blowing activity and the adverse employment action." *Id.* (citations omitted).

In evaluating whether a plaintiff's CEPA claim can survive a summary judgment motion, "the court must determine whether the plaintiff has offered sufficient evidence for a reasonable jury to find that the employer's proffered reason for the discharge was pretextual and that retaliation for the whistleblowing was the real reason for the discharge." *Blackburn v. UPS, Inc.*, 179 F.3d 81, 92-93 (3d Cir. 1999) (citation omitted).

Employees can demonstrate a causal link between protected activity and adverse employment action using circumstantial evidence. For example, the temporal proximity between the employee's expression and the adverse employment action or a "pattern of antagonism" on the part of the employer following the protected expression can raise the inference of causation. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citation omitted). However, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id.* (citations omitted).

*3. Analysis*

Espinosa claims the County retaliated against him for his testimony against fellow officers and for objecting to the unsafe working conditions in the Union County Jail. To

13

support his claim, Espinosa points to retaliatory animus on the part of the County as manifested by its decision to (1) terminate him, (2) include erroneous disciplinary charges in his personnel file, and (3) file a counter-suit against him for the wages he collected after May 1998. He also points to the temporal proximity between his refusal to report to the Jail and the County's stopping of his pay as evidence of causation.

The County argues Espinosa was terminated solely because he did not come to work. In support of this argument, it first points to Espinosa's own deposition, in which he admits the County would not have fired him had he returned to his job: Q. But you don't think you would have been terminated if you returned to the Union County Jail? A. No, I don't. App. at A1355. The County also cites the "Neafsey letter" of October 1995, in which prosecutors promised Espinosa that the County would continue paying his salary only until the end of the officers' trials. Finally, the County argues that there is no evidence of retaliatory animus, as the County continued to provide Espinosa with health benefits until March 2000, and delayed holding Espinosa's disciplinary hearing for nearly five months in order to give him an opportunity to resign without prejudice.

We find Espinosa failed to establish a causal link between his expressive conduct and his termination. First, Espinosa's own words undermine his retaliation claim. If what Espinosa claims was true (and the County was seeking to retaliate against him for testifying against fellow officers and objecting to the working conditions in the Jail), then it follows that the County would have terminated him on August 14, 2000 even if he would have returned to the Jail. During his deposition, however, Espinosa admitted that

14

he would not have been terminated had he returned to the Jail and started working on August 14, 2000. These two positions cannot be reconciled. Second, Espinosa knew in 1995 that the County intended to take him off the payroll after the conclusion of the trials because he was no longer performing any services for the County. We do not see how Espinosa can now claim the County's following through on this intention was in retaliation for his testimony. Finally, Espinosa presented no evidence supporting his claim that the County acted out of animus toward him. After the trials ended, the County provided Espinosa with a paycheck for 27 months (during which time he was collecting a paycheck from another full-time job) and health insurance for 33 months. Overall, given the evidence presented by Espinosa, we do not believe a jury could reasonably find the County terminated him in retaliation for his protected expression.

*B. Procedural Due Process Violation*

Espinosa also claims the District Court erred in granting summary judgment to the County and its co-defendants on his procedural due process claim under the Fourteenth Amendment. Specifically, he argues his rights were violated when the County made a variety of procedural missteps and stopped his pay without first holding a hearing. The County claims Espinosa received adequate due process and suffered no damages as a result of any mistakes. We find Espinosa's rights under the Fourteenth Amendment were not violated, as the August 2000 notice and January 2001 hearing satisfied the requirements of due process.

When a plaintiff challenges the actions of a state on due process grounds, we are

15

obligated to make two determinations: "whether the State has deprived the claimant of a protected property interest," and "whether the State's procedures comport with due process." *Marshall v. Lauriault*, 372 F.3d 175, 185 (3d Cir. 2004) (quoting *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001)). A property interest in a public sector job arises when the employee has "a legitimate entitlement to . . . continued employment" as determined by the laws of the state in which he works. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). In determining whether a State's procedures comported with the requirements of the Constitution, we balance (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest." *Gilbert v. Homar*, 520 U.S. 924, 931-32, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

New Jersey law defines the procedural due process required before disciplinary action is taken against an employee protected by the state's Civil Service Act: "the employee shall be notified in writing and shall have the opportunity for a hearing before the appointing authority or its designated representative." N.J.S.A. § 11A:2-13. "The hearing shall be held within 30 days of the notice of disciplinary action unless waived by the employee." *Id*. New Jersey's Administrative Code further requires that, "[w]ithin 20

16

days of the hearing…the appointing authority shall make a decision on the charges and furnish the employee either by personal service or certified mail with a Final Notice of Disciplinary Action." N.J.A.C. § 4A:2-2.6(d).[6]

It is undisputed that Espinosa was a civil service employee who had a property interest in his job. Accordingly, we must determine whether the procedures ultimately afforded Espinosa were constitutionally adequate.

Espinosa first argues due process principles required the County to provide him with a hearing before placing him on leave and terminating his pay on August 14, 2000. As the Supreme Court made clear in *Gilbert*, however, a temporary suspension without pay generally does not require a predeprivation hearing. *Gilbert,* 520 U.S. at 932. This is because "lost income is relatively insubstantial" as compared to the "severity of depriving someone of the means of his livelihood." *Id.* Accordingly, we do not find that the County's removal of Espinosa from its payroll without a hearing violated due process.

Even if a predeprivation hearing was not required, Espinosa argues he should have at least had a hearing promptly after the County stopped his pay on August 14, 2000. Instead, the County waited five months to hold a hearing (until January 2001) because it claimed it wanted to give Espinosa a chance to resign without the prejudice of disciplinary action.

When an employee has property interest in his job, a suspension without pay is

---

[6]Although Espinosa was entitled to the procedures outlined in the Civil Service Act, his due process claim in this appeal is rooted in the Fourteenth Amendment.

acceptable only if "the suspended employee receives a sufficiently prompt postsuspension hearing." *Gilbert*, 520 U.S. at 932. In this case, however, we find the delay was acceptable because Espinosa's interest in his paycheck was weak. In making this determination, we consider the following: (1) Espinosa had not performed any services for the County in over two years; (2) he agreed that he would stop receiving a paycheck and seek other work; and (3) he received over $100,000 from the County while working at another job on a full-time basis. Weighing Espinosa's weak interest against the County's interest in removing a non-working employee from its payroll, we find Espinosa had no basis on which he could claim he was entitled to additional payments from the County. As a result, we do not find the five month delay violated Espinosa's procedural due process rights.

Espinosa also claims the delay between his disciplinary hearing and the issuance of a decision in his case, which exceeded the time allowed by N.J.A.C. § 4A:2-2.6(d), violated his rights. We disagree. Because he had not worked for the County for over two years and had agreed to find another job, Espinosa's interest in his continued status as a County employee was weak. For this reason, the procedural protections afforded Espinosa by the County, which for the most part were consistent with the Civil Service Act, were more than sufficient.

Finally, Espinosa claims that the inclusion for 16 months of erroneous information on his Final Notice of Disciplinary Action constituted a procedural due process violation. Espinosa, however, fails to elaborate on this claim or explain how this error deprived him

18

of a protected property interest. Accordingly, we find this claim has no merit.[7]


*C. Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing*

As a County employee covered by the Civil Service Act and an agreement between the County and the Patrolmen's Benevolent Association, Union County Corrections Officers Local No. 199, Inc. ("Union Agreement"), Espinosa could only be terminated for "just cause." *See* N.J.A.C. § 4A:2-2.3; Union Agreement, App. at 1662 ("No employee shall be disciplined except for just cause."). He claims, however, the County breached the Union Agreement and the Civil Service Act when it terminated him for refusing to return to work in an environment the County knew was unsafe.[8] He further claims the County's ordering him back to an unsafe environment constituted a breach of the implied covenant of good faith and fair dealing.

The District Court mistakenly interpreted Espinosa's contract claim as identical to his CEPA claim, and, as a result, granted summary judgment in favor of the County with respect to this claim. We find, however, that Espinosa's CEPA and contract claims are not identical. His CEPA claim is based on his being fired in retaliation for his protected

---

[7]It appears that Espinosa originally brought this as a substantive due process claim. Had we analyzed the claim as such, we would have reached the same conclusion because he presents no evidence that his reputation was damaged by the inclusion of the erroneous information in his personnel file.

[8]Because we review a motion for summary judgment decided against Espinosa, we take as true his assertion that it would not have been safe for him to return to work.

19

expression. In contrast, his contract claim is based on his being fired without "just cause," which does not require that he show retaliatory conduct on the part of the County. Although the District Court did not appropriately analyze Espinosa's contract claim, we ultimately uphold its ruling.

The County ultimately terminated Espinosa for abandoning his job. New Jersey's Administrative Code describes job abandonment as follows: "Any employee who is absent from duty for five or more consecutive business days without the approval of his or her superior shall be considered to have abandoned his or her position and shall be recorded as a resignation not in good standing." N.J.A.C. § 4A:2-6.2.

The County agreed to continue to pay Espinosa his salary, even though he was absent from work, from the time he began assisting prosecutors in October 1995 until the conclusion of the officers' trials in May 1998. Accordingly, his absence from work during this period could not have constituted job abandonment. After May 1998, however, Espinosa did not have permission to be absent and he failed to perform any services for the County justifying compensation under his Union Agreement or the Civil Service Act. This was clearly job abandonment.

In this appeal, Espinosa essentially argues there should be an exception to the plain language of N.J.A.C. § 4A:2-6.2 permitting employees who are authorized to remain absent from work for a finite period to remain absent and on the County's payroll indefinitely. Were such an exception to exist, it would only be possible through the approval of an employee's superiors. Since neither the County nor Espinosa's superiors

authorized an indefinite period of absence from work with pay and Espinosa never found another County job that would justify his being on the County's payroll, we find the County's termination of Espinosa was based on just cause and, as a result, Espinosa's contract claim must fail.

*D. Fraud*

Espinosa next contends the Prosecutor's Office committed common law fraud by promising him another position in the County in an effort to induce Espinosa to testify against those involved in the INS detainee abuses. We find Espinosa did not offer sufficient evidence for a reasonable jury to conclude that such a promise existed.

"A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Jewish Center of Sussex County v. Whale*, 432 A.2d 521, 524 (N.J. 1981) (citations omitted). Fraud claims succeed only when they are established by clear and convincing evidence. *New Jersey Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div. 1998).

To establish fraud on the part of the Prosecutor's Office, Espinosa must first show prosecutors promised him a job. By Espinosa's own admission in January 1998, however, no such promise was made: Q. Were you ever promised a job by anybody? A. I have not been promised a job to this day. Q. Did the Prosecutor's Office ever promise you a job? A. No, they have not. Excerpt of Trial Transcript in *New Jersey v. James Rice, et*

21

*al.*, App. at A1505. In addition, the "Neafsey letter" sent to Espinosa after striking a bargain with prosecutors is explicit about a lack of a firm job offer: "we are obviously unable to guarantee [Espinosa] a position . . .." App. at 1542. Given Espinosa cannot establish the existence of any promise on the part of the Prosecutor's Office, his fraud claim must fail.

*E. Tortious Interference with a Prospective Economic Advantage*

Espinosa also claims that the Prosecutor's Office tortuously interfered with his prospective economic advantage when it suggested to County officials a way by which to terminate him. We find Espinosa did not offer sufficient evidence for a reasonable jury to conclude he had any prospective economic advantage with which the Prosecutor's Office could interfere.

To establish a claim for tortious interference with a prospective economic advantage, a plaintiff must show the following: (1) the existence of a reasonable expectation of economic advantage; (2) an intentional and malicious interference with that expectation by the defendant; (3) a causal connection between the interference and the loss of the prospective gain; and (4) damage. *Printing Mart-Morristown v. Sharp Electronics Corp.*, 563 A.2d 31, 37 (N.J. 1989).

Espinosa claims he had a reasonable expectation of continued payment by the County with which the Prosecutor's Office interfered. We disagree. Espinosa knew he would not be kept on the County's payroll in perpetuity: Q. After your conversation with Mr. Lapolla [in 1999,] did you understand that there was a certain timeframe to the next

22

step in your obtaining a position within Union County? A. Well, *I understood . . . I wasn't going to be home getting paid forever.* I understood that. I mean, there's a timeframe to everything. App. at A1329 (emphasis added). In addition, he had not performed any services for which he could expect to be paid for over two years. Given these facts, we find Espinosa did not present sufficient evidence showing a reasonable expectation of continued payment by the County.

### F. Rule 56(f) Motion

Espinosa finally claims the District Court abused its discretion by denying his Motion to Stay the Parties' Pending Cross-Motions for Summary Judgment (under Federal Rule of Civil Procedure 56(f)), thereby prohibiting him from deposing two Union County corrections officers. These officers would have testified to the following: (1) a culture of retaliation existed inside the Jail; (2) the President of the corrections officers' union had lied under oath about the conditions Espinosa would face inside the Jail should he return; and (3) the County used payroll deductions from corrections officers' pay to support the families of corrections officers convicted of abusing the INS detainees. We find the District Court did not abuse its discretion.

Rule 56(f) permits the court to order a continuance of a motion for summary judgment "should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f). To succeed, a Rule 56(f) motion "must identify with specificity what particular information is sought; how, if uncovered, it would preclude

23

summary judgment; and why it has not previously been obtained." *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir. 1989) (internal quotations and citations omitted).

Espinosa fails to identify with specificity how the testimony of the two Union County corrections officers would have precluded summary judgment. The officers would have provided evidence of the union's indifference to Espinosa's plight and the dangerous prospects facing those who testify against fellow officers and return to work. Espinosa, however, had already introduced ample evidence of the union's animus towards him and the retaliation he would likely face if he returned to the Jail. Such evidence is cumulative. In addition, we have taken as true his assertion that he could not return to work. Accordingly, we find the District Court acted well within its discretion when it denied Espinosa's Rule 56(f) motion.

IV.

A. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

In its counterclaim against Espinosa, the County seeks the return of over $150,000 in compensation provided to Espinosa between the conclusion of the officers' trials in May 1998 and Espinosa's termination in August 2000. The County claims Espinosa's retention of this compensation breaches the covenant of good faith and fair dealing associated with Espinosa's October 1995 agreement with the Prosecutor's Office. We conclude the County did not present sufficient evidence for a reasonable jury to find that Espinosa breached this covenant.

Under the covenant of good faith and fair dealing, "neither party shall do anything

24

which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002) (citations and quotations omitted). However, allegations of unfair dealing may only advance upon the showing of improper motive. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). That is, the case law "note[s] a state of mind or malice-like element to breach of good faith and fair dealing, holding that the duty excludes activity that is unfair, not decent or reasonable, nor dishonest." *Id.* (citations and quotations omitted). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." *Id.* (citations omitted).

The County contends Espinosa knew he was not entitled to payment of his salary after the conclusion of the officers' trials and he deceitfully accepted and retained them. The County further alleges that the issue of Espinosa's motivation in keeping these payments must be left to a jury. The County is correct that a defendant's motive is generally a fact question reserved for a jury. However, in order to survive a summary judgment motion, a plaintiff burdened with proving malice on the part of another party to a contract must at least proffer sufficient evidence such that a reasonable jury could return a verdict for that plaintiff. *Anderson*, 297 F.3d at 247.

In this case, the County presented no evidence that Espinosa acted out of malice. Espinosa interacted with County officials on various occasions after the conclusion of the trials, never concealing or lying about being on the payroll. In July 1998, for example,

Espinosa met with Union County officials about his personnel file. In September 1998, he contacted the County Manager for a letter of recommendation. In February 1999, he requested a meeting with the County Manager. And, in March 1999, he met with the County Manager. In addition, the County Manager knew in March 1999 that Espinosa was still on the payroll. Based on these interactions, and a lack of any evidence showing malice on the part of Espinosa, we must reject the County's contract claim.

*B. Unjust Enrichment*

The County also seeks return of the compensation paid to Espinosa after the trial on a theory of unjust enrichment. It argues Espinosa seeks to retain payments and benefits, provided at the taxpayer's expense, that he never should have received. We conclude the County did not offer sufficient evidence for a reasonable jury to find that Espinosa was unjustly enriched.

Unjust enrichment is the receipt of a benefit from another, the retention of which, without payment, would be unjust. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). The unjust enrichment doctrine requires a "plaintiff [to] show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* (citations omitted).

The County presented no evidence supporting its expectation that it was to be repaid by Espinosa. The County Manager knew Espinosa was on the County's payroll in March 1999, nearly one year after the conclusion of the trials. At that point, however, the

County Manager sought only to remove Espinosa from the payroll and not the return of 10 months of his salary. The County Manager also admitted that he never asked Espinosa to return his compensation. Based on this lack of evidence, we find that the County's unjust enrichment claim must fail.

V.

For the foregoing reasons, we will affirm the District Court in all respects.