

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-31-1999

# Showalter v. University of Pittsburgh Medical Center

Precedential or Non-Precedential:

Docket 98-3320

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Showalter v. University of Pittsburgh Medical Center" (1999). *1999 Decisions.* Paper 242.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/242

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 31, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3320

DONALD SHOWALTER,

Appellant

v.

UNIVERSITY OF PITTSBURGH MEDICAL CENTER

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 96-cv-01317)
(Magistrate Judge: Honorable Francis X. Caiazza)

Argued: March 1, 1999

Before: ALITO and McKEE, Circuit Judges, and
SCHWARTZ, Senior District Judge.*

(Opinion Filed: August 31, 1999)

        SANFORD NEIMAN (ARGUED)
        MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN
        600 Grant Street
        2900 USX Tower
        Pittsburgh, PA 15219

        Counsel for Appellant

_____

*The Honorable Murray Schwartz, Senior United States District Judge
for the District of Delaware, sitting by designation.

LOUIS J. KRZEMIEN, JR. (ARGUED)
UNIVERSITY OF PITTSBURGH
MEDICAL CENTER
200 Lothrop Street
Pittsburgh, PA 15213

Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

Donald Showalter sued his former employer, the
University of Pittsburgh Medical Center ("UPMC"), in federal
district court, alleging violations of the Age Discrimination
in Employment Act ("ADEA"), 29 U.S.C. S 621 et seq. UPMC
moved for summary judgment, and a Magistrate Judge 1
granted its motion, holding (1) that "Showalter c[ould] not
establish the fourth element of his prima facie case because
UPMC did not retain unprotected workers" and (2) that
Showalter could not "discredit UPMC's articulated
legitimate reasons for his dismissal or establish that age
discrimination motivated UPMC's decision." App. at 62. We
hold that the Magistrate Judge erred in making both legal
determinations, and we therefore reverse the grant of
summary judgment and remand for further proceedings.

I.

During the early 1990's, the Presbyterian University
Hospital ("Presbyterian"), which UPMC already owned,
merged with the Montefiore University Hospital
("Montefiore"). Until approximately October 1994, UPMC
maintained separate security departments at Montefiore
and Presbyterian. As of May 1994, George Eror directed
Montefiore's security department, which had four security

_____

1. The District Court, after receiving the consent of both parties
pursuant to 28 U.S.C. S 636(c)(1) (1994), issued an order assigning this
case to the Magistrate Judge. App. at 46. Showalter was entitled to
appeal the judgment of the Magistrate Judge directly to this Court. See
28 U.S.C. S 636(c)(3) (amended 1996).

2

supervisors, and Donald Charley directed Presbyterian's
security department, which had three security supervisors.
Appellant's Br. at 11.

Because of budgetary constraints, UPMC required
Montefiore and Presbyterian to eliminate one security
supervisor each in May 1994. The four Montefiore security
supervisors were Messrs. Showalter, Leahy, Wright, and
Delbane, who were 61, 52, 45, and 38 years old,
respectively. Eror terminated Delbane, the youngest of the
four Montefiore supervisors, because he had the weakest
performance rating. App. at 88. In reaching this decision,
Eror compared Delbane only with other Montefiore security
supervisors and not with Presbyterian security supervisors.
Likewise, Charley evaluated Presbyterian security
supervisors only against other Presbyterian security
supervisors. App. at 75-78.

In August 1994, UPMC required Montefiore to eliminate
another security supervisor. Because the three remaining
supervisors had virtually indistinguishable performance
records, Eror decided to terminate the individual with the
least department seniority. According to David Treece -- the
human resource employee who advised both Eror and
Charley in personnel matters, such as reduction-in-force
("RIF") decisions -- UPMC department heads used one of
the following three types of seniority to make RIF decisions:
job seniority (time employed at a given position),
department seniority (time employed in a given
department), and hospital seniority (time employed by the
hospital). App. at 84, 86.

Neither party disputes that Showalter had less
department seniority than Leahy or Wright, nor does either
party dispute that Wright had less job seniority than
Showalter. Thus, had Eror selected job seniority rather
than department seniority as the basis for making his
decision, Wright would have been terminated instead of
Showalter. In addition, it is undisputed that Showalter had
more seniority -- of either the job or department variety --
than any of the Presbyterian security supervisors.
Consequently, had Eror compared Showalter to both
Montefiore and Presbyterian security supervisors,
Showalter would not have been terminated.

3

The Magistrate Judge granted UPMC's motion for summary judgment for two reasons: first, he held that Showalter failed to establish a prima facie case of age discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); and second, he held that even if Showalter had established a prima facie case of age discrimination, Showalter did not submit evidence" `from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.' " App. at 58 (Magistrate Judge Opinion) (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

II.

We exercise plenary review over an order granting summary judgment, and we apply the same standard that the lower court should have applied. Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). In making this determination,"a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Armbruster, 32 F.3d at 777.

On appeal, Showalter makes two arguments. First, Showalter contends that the Magistrate Judge applied the wrong legal standard in determining that he did not satisfy the fourth element of the McDonnell Douglas prima facie test. Second, Showalter claims that he submitted evidence from which a reasonable factfinder could disbelieve UPMC's proffered reasons for terminating him.2  We will address each argument in turn.

---

2. Showalter does not argue that he presented evidence from which a reasonable factfinder could conclude that UPMC was more likely than not motivated by an invidious discriminatory reason.

4

A.

We agree with appellant's argument that the Magistrate Judge applied the wrong legal standard in determining that Showalter did not satisfy the fourth element of a prima facie age discrimination case under the McDonnell Douglas framework. McDonnell Douglas set forth a burden-shifting framework for the presentation of evidence in discriminatory treatment cases litigated under Title VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000e-1 et seq. This Court "has applied a slightly modified version of this scheme in ADEA cases." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc); cf . O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311 (assuming, without deciding, that the McDonnell Douglas framework applies to ADEA cases). In Keller, we wrote:

> The McDonnell Douglas scheme has three steps. First, the plaintiff must produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case. . . . When the plaintiff alleges unlawful discharge based on age, the prima facie case requires proof that (i) the plaintiff was a member of the protected class, i.e., was 40 years of age or older (see 29 U.S.C. S 631(a)), (ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and (iv) that the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination.

130 F.3d at 1108 (citations omitted).

This Court has held that in RIF cases, "this framework is inadequate with respect to the last factor." Armbruster, 32 F.3d at 777. Instead, the plaintiff must show that the employer retained "unprotected workers." Id. (citing Seman v. Coplay Cement Co., 26 F.3d 428, 431 (3d Cir. 1994), abrogated on other grounds by Smith v. Borough of Wilkinsburg, 147 F.3d 272, 277 (3d Cir. 1998); Billet v. Cigna Corp., 940 F.2d 812, 816 n. 3 (3d Cir. 1991), abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks, 509 U.S. 503, 517-18 (1993)).

If the plaintiff establishes a prima facie case, then "[t]he burden of production (but not the burden of persuasion)

5

shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge." Keller, 130 F.3d at 1108 (citing Hicks, 509 U.S. at 506-07 (1993)). Should the defendant fail to satisfy this burden, judgment should be entered for the plaintiff. Id. But if the defendant satisfies this burden, then the burden of production shifts back to the plaintiff to proffer evidence " `from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.' " Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

In the instant case, the appellant satisfied the first three prima facie elements, and thus only the fourth element is at issue. The Magistrate Judge held that because UPMC did not retain unprotected supervisors from Montefiore, i.e., supervisors under the age of 40, appellant could not satisfy the fourth element, and summary judgment was therefore appropriate. App. at 56-57, 62.

In light of our opinions in Armbruster, Seman, and Billet, all of which held that the fourth element of a prima facie age discrimination case in a RIF context requires the plaintiff to show that unprotected workers were retained,[3] the Magistrate Judge understandably applied this standard rather than requiring Showalter to show that the retained workers were "sufficiently younger" than he was at the time of discharge. See Keller, 130 F.3d at 1108; see also Healy v. New York Life Ins. Co., 860 F.2d 1209, 1214 n.1 (3d Cir. 1988) (holding, in a RIF context, that the fourth prima facie element is satisfied if the plaintiff can "show that he was discharged, while the company retained someone younger"). Nevertheless, in light of the Supreme Court's opinion in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996), we hold that the District Court should have applied the "sufficiently younger" standard instead of the "unprotected class membership" standard.

_____

3. See Armbruster, 32 F.3d at 777; Seman, 26 F.3d at 431; Billet, 940 F.2d at 816 n.3.

6

In O'Connor, the Supreme Court addressed the question "whether a plaintiff alleging that he was discharged in violation of the [ADEA] must show that he was replaced by someone outside the age group protected by the ADEA to make out a prima facie case under the framework established by McDonnell Douglas[.]" Id. at 309. A unanimous Court held that "the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case." 517 U.S. at 312. The Court explained:

> The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. S 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," S 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old.

Id.

While the Court limited its review to the lower court's "treatment of [the] case as a non-reduction-in-force case," id. at 310 n.1, its reasoning applies with equal force in a RIF case.[4] To hold otherwise in this appeal would require us to interpret 29 U.S.C. SS 623(a)(1), 631(a) as if the statutory language permits an inference of age discrimination when a 40 year-old is discharged and a 39 year-old is retained, but permits no inference of age

_____

4. Notwithstanding the Magistrate Judge's decision to apply the "unprotected class membership" standard, he conceded that "the [O'Connor] Court's reasoning would seem to apply equally to RIF cases," but then rejected the "sufficiently younger" standard because the Supreme Court limited its holding to non-RIF cases. App. at 55 n.3.

7

discrimination when, as in this case, a 60 year-old is discharged and a 44 year-old is retained. Such a holding would contravene the logic of O'Connor.

Further support for applying a "sufficiently younger" standard in a RIF context is found in Torre v. Casio, Inc., 42 F.3d 825 (3d Cir. 1994). There, a former employee (Torre), who was 59 years old when discharged, sued Casio under the ADEA. Torre had been a regional sales manager in the audio/visual division for the eastern sales region. Id. at 827. Torre alleged that his supervisor transferred him in April 1990 into a "dead-end position . . . from which he could be fired at a more propitious -- and seemingly innocent -- moment." Id. That moment came approximately one month later in May 1990 when Casio notified Torre of his discharge "as part of a reduction in force." Id. at 827-28.

This Court observed that "[a]t the time Torre was transferred and then discharged, the two other [regional sales managers in the audio/visual division] . . . -- aged 38 and 41, respectively -- were retained in their positions," and "when Torre was terminated in the reduction in force, other similarly-situated but younger employees were retained by Casio." Id. at 831. We then held that the fourth prima facie element "must be relaxed in certain circumstances, as when there is a reduction in force," id., and essentially adopted a "sufficiently younger" standard that permitted an inference of age discrimination even if a retained worker was over the age of 40. Id. Thus, in view of the Supreme Court's reasoning in O'Connor and our opinion in Torre, we hold that the Magistrate Judge erred in applying the "unprotected class membership" standard rather than the "sufficiently younger" standard as the fourth element of the McDonnell Douglas prima facie test.

In order for a plaintiff to satisfy the "sufficiently younger" standard, we have noted that there is no "particular age difference that must be shown," but while "[d]ifferent courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot." Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) (citations omitted). In this case, Showalter was eight years older than Leahy and 16 years older than Wright. We hold that the

8

differences in age between Showalter and the retained employees were sufficient to satisfy the fourth element of a prima facie case. See Sempier, 45 F.3d at 730 (holding that the fourth prong of a prima facie age discrimination case was satisfied where plaintiff was replaced by two individuals –– one who was four years younger than plaintiff and the other who was ten years younger).

B.

We now turn to Showalter's second argument, i.e., that Showalter submitted evidence from which a reasonable factfinder could disbelieve UPMC's proffered reasons for terminating him. UPMC provided the following justification for terminating Showalter: it claimed that economic circumstances prompted it to terminate a Montefiore security supervisor and that it selected Showalter because he had the least department seniority of the three Montefiore security supervisors. App. at 64 (UPMC's Brief in Support of Its Summary Judgment Motion).

Showalter contends that "[a] factfinder could reasonably infer from the evidence that the decision-maker, UPMC Security Director Eror, terminated Showalter after assuming authority over the consolidated supervisory security staffs and was terminating him from the consolidated unit, not [Montefiore]." Appellant's Br. at 18. We disagree. Neither party disputes that Eror notified Showalter of his discharge by letter, dated August 29, 1994. Charley provided the earliest date in the record for when Eror assumed authority over the consolidated supervisory security staffs. He testified: "I don't remember the exact date. I believe it was some time either at the end of August, beginning part of September, around that time frame; but exactly when, I don't recall." App. at 66–67. Eror, on the other hand, testified that he began supervising the consolidated Montefiore and Presbyterian security department in October 1994. See App. at 113. Similarly, David Treece, in a memorandum dated August 25, 1994, stated that "Eror [would] assume responsibility for both [Montefiore] and [Presbyterian] Security in mid or late September." App. at 78. Thus, the record provides little, if

9

any, evidence that Eror was in charge of a consolidated security department by the end of August.

Moreover, there is no evidence that UPMC had made any employment decisions as of that date in which it compared Montefiore security supervisors with Presbyterian security supervisors or vice-versa. On the contrary, the only evidence regarding prior UPMC RIF decisions shows that Montefiore security supervisors were compared only with other Montefiore security supervisors and that Presbyterian security supervisors were compared only with other Presbyterian security supervisors. Viewing all this evidence, we hold that no reasonable factfinder could reject as pretextual UPMC's explanation that it compared Showalter with only other Montefiore employees because that was its traditional practice.

Showalter also argues that a reasonable factfinder could conclude that UPMC's decision to use department seniority as the basis for terminating the contested RIF decision was actually a pretext for age discrimination. We agree. In his deposition, Treece stated in effect that, when a layoff was to be made based on seniority, UPMC did not have afixed policy as to which type of seniority should be used. App. at 84. Rather, according to Treece, "it was a common practice that in any reduction in force [he] would look at alternative methods of calculating seniority to determine who would be affected by the layoff." Id. Treece stated that he discussed the consequences of using alternative forms of seniority with Eror prior to Showalter's termination. App. at 86b–86c. Furthermore, Charley testified that when he made RIF decisions, Treece generally advised him of the three available seniority options and which individuals would be discharged under each option. App. at 71–72. Eror, on the other hand, contradicted their testimony. While he recalled discussing the RIF decision at issue with Treece, he claimed that Treece did not inform him of any seniority option other than department seniority. App. at 106. Indeed, Eror testified that "as far as [he] knew," department seniority was always used for a RIF. App. at 106–07.

Based on this evidence, a reasonable factfinder could find that Eror's explanation for his choice of departmental seniority –– i.e., that as far as he knew, this form of

10

seniority was always used in a RIF -- was pretextual. A reasonable factfinder could conclude that Eror had the discretion to choose any of the three forms of seniority; that he knew in advance the result that each choice would produce; and that he selected department seniority because he knew it would result in the layoff of the oldest employee, Showalter. Accordingly, we hold that the Magistrate Judge erred in holding that Showalter did not adduce evidence from which a reasonable factfinder could disbelieve UPMC's articulated justification for terminating Showalter.

III.

For these reasons, we reverse the grant of summary judgment in favor of UPMC and remand for further proceedings.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11