Ellis BENJAMIN, Appellant,

v.

E.I. DU PONT DE NEMOURS
AND COMPANY.

No. 02–4167.

United States Court of Appeals,
Third Circuit.

Argued July 23, 2003.

Decided Sept. 5, 2003.

Garry W. Aber (Argued), Aber, Gold-lust, Baker, & Over, Wilmington, DE, for Appellant.

Raymond M. Ripple (Argued), Donna L. Goodman, E.I. du Pont de Nemours and Company, Legal Department, Wilmington, DE, for Appellee.

Before ALITO, FUENTES, and BECKER, Circuit Judges.

OPINION

BECKER, Circuit Judge.

Ellis Benjamin appeals from the District Court's order granting summary judgment to defendant E.I. DuPont De Nemours & Co. on this action alleging discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. Benjamin, a DuPont employee since 1988, was released as part of a major layoff that affected approximately one-third of the personnel at his location. Because we conclude that Benjamin has made a *prima facie* case of age discrimina-

tion and has adduced evidence from which a fact finder could reasonably disbelieve DuPont's articulated reasons for his termination, we will reverse the District Court's grant of summary judgment.

# I

Benjamin joined DuPont in 1988 as a member of the Agricultural Products Division. During his eleven years with DuPont, Benjamin undertook extensive education and training in chemistry to supplement the 72 college credits in biology and chemistry he had received as an undergraduate (he had no college degree). At the time of his discharge, he had risen to the position of Senior Assistant Chemist.

In the summer of 1999 DuPont began a reduction in force in its Agricultural Products Division. For this purpose, DuPont set up a process where committees would meet to analyze each department. Selection criteria were developed to facilitate retention of employees with demonstrated skills, knowledge and ability to perform current and future work. Each committee had to rank employees by assigning them scores from 1–5 in a variety of categories. An employee's overall score was reached by totaling the individual scores in each category. An initial cut-off score was set. Employees with that score or below would be terminated.

The committee that decided whether to retain Benjamin consisted of Dr. Donald Morgan, who was Benjamin's second-line supervisor, Dr. Thomas Pappenhagen, who had had no prior contact with Benjamin, and Dr. Yih–Fen Maa, who had worked with Benjamin in a few studies in 1995, 1996 and 1997. The evaluation process, which resulted in Benjamin's termination, took place in two stages. First, the committee evaluated the qualifications of forty-three employees and ranked them against the selection criteria. Benjamin's total score was 22, which placed him in a four-way tie just above the cut-off score. However, after the initial cut-off, the selection committee realized that a further reduction of two more candidates was required. The committee focused on the employees in the four-way tie: Benjamin was selected as one of the two employees to be discharged.

Benjamin claims that age discrimination occurred in both stages of the selection process. First, he submits that the committee failed to follow the established procedure in conducting the selection process. The committee was instructed not to consider as qualification the educational degrees possessed by the applicant when evaluating his or her knowledge of analytical chemistry. Instead, the committee was to judge the "demonstrated knowledge" and "demonstrated skill" of each applicant. Benjamin contends that in contravention of these instructions, the committee relied only on whether the candidates had a B.S. in chemistry, instead of determining whether the candidate had the knowledge equivalent to that degree. He suggests that this misapplication implies age discrimination insofar as older workers are less likely than younger workers to have college degrees. Benjamin argues that he should have received a higher score in this category, because even though he did not have a B.S. in chemistry, he had knowledge equivalent to that degree.

Benjamin also argues that in the second stage of the selection process he was deselected because of his age, and that DuPont's rationale for his dismissal was pretextual. Benjamin points out that when the final cut was made, of the four chemists who were tied with a score of 22, the two youngest (ages 25 and 43) were selected to remain, while the two oldest (ages 53

and 46) were terminated. The stated reason for Benjamin's termination was his limited ability to network and his lack of interpersonal skills. Benjamin points out that his employment evaluations show that networking was one of his greatest strengths. He claims that based on these evaluations a fact finder could reasonably disbelieve DuPont's articulated reasons for his termination.

The District Court concluded that Benjamin had made out a *prima facie* case. Having found a *prima facie* case, however, the District Court granted summary judgment for DuPont. The District Court concluded that DuPont articulated a legitimate reason for not choosing Benjamin, while Benjamin was unable to produce evidence from which a fact finder could either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the action. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997).

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and apply the same standard the District Court should have applied. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir.2000).

## II.

 Under the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to survive summary judgment a plaintiff must first prove a *prima facie* case of discrimination. If the plaintiff does so, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Id.* at 802. If the defendant meets its burden of production, any presumption of discrimination drops from the case and the plaintiff has the burden to adduced evidence from which a fact finder could reasonably disbelieve the employer's articulated reasons for the action. *Id.* at 804.

When the plaintiff alleges unlawful discharge based on age, the *prima facie* case requires proof that: (1) the plaintiff was a member of the protected class, i.e., was 40 years of age or older; (2) the plaintiff was discharged; (3) the plaintiff was qualified for the job; and (4) the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination. *Keller*, 130 F.3d at 1108 (citing *Sempier v. Johnson*, 45 F.3d 724, 728 (3d Cir.1995)). In this case, the parties agree that Benjamin was a member of the protected class and that he was discharged. They disagree, however, as to whether he was qualified for the job and replaced by a sufficiently younger person.

DuPont argues that Benjamin was discharged because he was less qualified for the job than the three other candidates with the same score. DuPont points out that the selection committee concluded that Benjamin's limited ability to network and lack of interpersonal skills rendered him a less-competitive candidate.

The District Court held that Benjamin established that he was qualified for the job. We agree. First, the record supports the conclusion that Benjamin's initial score could have been 23, which would have placed him above the four-way tie score. Qualification for the position was based on knowledge of analytical chemistry, and the parties agree that the standard required was knowledge *equivalent* to a B.S. degree in chemistry. The committee assigned Benjamin a score of 2 out

of 5 in this category without considering whether he had the knowledge equivalent to a B.S. in chemistry. As Dr. Morgan's testimony reveals, the committee relied solely on the fact that Benjamin did not have a B.S. in chemistry.[1]

Furthermore, even if Benjamin could not have gotten a higher score, his initial score was not below the automatic cut-off. In fact, others with the exact same score retained their jobs. As the District Court recognized, *McDonnell Douglas* requires only that a person be a qualified applicant, not the *most* qualified applicant. In sum, construing the facts in the light most favorable to Benjamin, we conclude that Benjamin established that he was qualified for the job.

DuPont also argues that Benjamin provided no evidence that could lead a reasonable fact finder to conclude that younger employees were treated more favorably in the selection process related to the downsizing. DuPont argues that, prior to the downsizing, 74% of the employees fell within the protected class. After the downsizing, 72% were in the protected class, a statistically insignificant difference. Likewise, the average age pre-downsizing was 43, and the average age post-downsizing was 41. DuPont argues that downsizing data only has probative value if the difference between the pre-downsizing population and the terminated population is statistically significant. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 n. 20, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

Benjamin replies that this analysis misses the mark because the inquiry is not "pre-downsizing population" versus "post-downsizing population"; rather, it is the more individualized question whether Benjamin was terminated instead of another person merely because he was older. As we stated in *Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231 (3d Cir.1999), the question is whether the retained employee is "sufficiently younger" than the non-retained employee. In *Showalter*, the difference in ages was eight years; here, it was seven and twenty-eight years respectively, certainly a comparable spread. In sum, we agree with the District Court's conclusion that Benjamin was replaced by a significantly younger person, and that he made out a *prima facie* case of age discrimination.

## III.

■ Upon concluding that Benjamin has satisfied the first *McDonnell Douglas* step, the burden of production shifts to DuPont, which must offer evidence to support a finding that it had a legitimate, non-discriminatory reason for the discharge. The District Court concluded that DuPont met its burden of production. The selection committee determined that Benjamin was less qualified for the position than the other applicants – he lacked networking ability and interpersonal skills, and did little to increase his technical skills.

Benjamin, however, takes issue with the committee's conclusion that he had limited ability to network. Benjamin relies on his Discussion of Contribution reports ("DOCs"), which are yearly reviews drafted by the employees and attested by the immediate and second-line supervisors.

1. Dr. Morgan testified as follows:

Q: Could somebody get a three there without having a B.S.?
A: I do not believe so, but I don't remember of (sic) any cases like that.

Q: You rated [Benjamin's] analytical knowledge without knowing the amount of training he had?
A: Mr. Benjamin did not have a Bachelor's in chemistry. So we rated him on not having the Bachelor's in Chemistry.

Benjamin claims that these evaluations show that DuPont's articulated reasons are mere pretext. For example, in his most recent DOC, networking was described as one of Benjamin's greatest strengths. Further, attacking the the committee's conclusion that he lacked interpersonal skills, Benjamin cites reviews in which he was described as pleasant to work with, and a successful mentor. As to the accusation that he did little to increase his technical skills, his reviews stated that he was constantly seeking new learning opportunities, and viewed as a resource to the analytic community. Likewise, he was said to have diligently mastered new technology. In presenting this evidence, Benjamin has certainly demonstrated sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994) (citation omitted).

The District Court granted summary judgment for DuPont in spite of the evidence adduced by Benjamin. The District Court stated that Benjamin's argument was unavailing "since these performance reviews were often written by plaintiff himself and attested to by his supervisors later." The District Court points out that in his last DOC, Benjamin stated that his future goals were to relate more to peers, to network with others and to relate to others in a more productive fashion. The Court concluded that these statements supported the committee's articulated reasons for Benjamin's termination and show that they were not merely a pretext for discrimination.

We disagree. The mere fact that Benjamin wrote the reviews does not mean that no reasonable jury could credit them when two supervisors signed off on them. They did not have to do so. Likewise, although the District Court correctly noted that Benjamin wrote in his last DOC that his future goals were to "relate more to peers and by networking" and to "network with others," it is possible that a jury could interpret this to mean that he wanted to improve upon existing skills, not that he was currently deficient in that area.

DuPont goes to great lengths to explain that even if the DOCs show that networking was one of Benjamin's strengths, they were not considered by the selection team during the meeting. Rather, Dr. Morgan, as Benjamin's second-line supervisor, represented Benjamin's qualifications to the selection team. Therefore, DuPont concludes that the DOCs are completely irrelevant to a determination as to the validity of the selection team's assessment. DuPont's argument, however, is unconvincing. The committee was explicitly instructed to review the DOCs, and to gather relevant information about the candidates. If the committee did not base its decision on anything concrete, such as the DOCs, a jury could infer that the committee members made their decision based on age.

In sum, Benjamin has presented sufficient evidence that contradicts and shows inconsistencies in DuPont's proffered reasons to allow a reasonable fact finder to rationally find them "unworthy of credence." *Fuentes,* 32 F.3d at 765 (3d Cir. 1994) (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 531 (3d Cir. 1992)). The District Court's order granting summary judgment to the defendants will be reversed.