OPINION OF THE COURT
PRATTER, District Judge.
Marilyn Williams appeals from the entry of summary judgment in favor of her former employer, St. Joan of Arc Church (“Church”), in this case brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (“ADEA”). Because the District Court erroneously viewed the disputed facts in the light more favorable to the movant Church than to Ms. Williams, we will reverse.
Ms. Williams worked as the parish secretary from 1983 until May 2003, when her position was terminated. Ms. Williams was then 64 years old. While the parties agree that her position was eliminated, the parties dispute whether Ms. Williams was “terminated” or whether she “resigned.” She asserts that she only left her employment after being told by the pastor, Father Pribonic, that her position would be eliminated as of the end of July 2003. According to Ms. Williams, during this interchange Father Pribonic made a specific reference to her age and planning for her retirement.
The Church disputes Ms. Williams’s account of this meeting. During discovery, Father Pribonic testified that the parish secretary position was eliminated for budgetary reasons to allow for the creation of a new position of parish office manager by combining the tasks previously performed by Ms. Williams with those of another *182 employee, Mary Ann Heaps, whose part-time bookkeeper position was also being eliminated. Ms. Heaps, who was then 47 years old, ultimately was selected to be the parish office manager, at which point she assumed the duties previously performed by Ms. Williams.
The core of this case concerns the interplay of the evidentiary burdens borne by the parties with the appropriate summary judgment standards. While a jury may eventually agree with the District Court’s anticipatory expressions of various practical realities and lack of discriminatory motives, we discern too many material factual disputes in the current record on the fundamental issues with too high a burden having been applied to Ms. Williams below to embrace the District Court’s summary judgment conclusion.[1]
The District Court concluded first that Ms. Williams had not presented sufficient evidence that the Church was actually motivated by a discriminatory animus and that the reasons given by the Church for the termination of her position were merely pretextual. The District Court stated that “[bjeeause the Church is free to consolidated [sic] parish staff positions for reasons of economy and efficiency, to maintain a claim for wrongful discharge, Plaintiff must make a showing that Defendant’s proffered legitimate business reasons were merely pretextual.” Report and Recommendation 8.
The District Court next concluded that because she presented no evidence supporting pretext, the only avenue by which Ms. Williams could avoid summary judgment depended on the Church’s decision to place the younger Ms. Heaps[2] in the new position of office manager. Here, the District Court concluded that Ms. Williams’s failure to apply for the new position defeats any such claim.[3] Id. at 10. The District Court considered that Ms. Williams “was expressly invited to apply for the position and declined to do so, electing instead to terminate her employment.” Id. at 11. According to the District Court, because Ms. Williams did not apply for the new position, she could not maintain a claim that the Church chose someone younger instead of her. The District Court further concluded that for these same reasons, Ms. Williams could not make out a claim for constructive discharge. Id. at 12.
Finally, the District Court found that Ms. Williams failed to present sufficient evidence that she was subjected to an adverse employment action to permit her to proceed on her age discrimination claims. Id. at 14.
We find that the District Court erred in concluding that Ms. Williams did not establish her prima facie claim as a matter *183 of law and also by substituting its own judgment for that of a jury’s on the issue of whether — and, if so, when and to what degree of significance — an offer was extended to Ms. Williams to apply for the newly created office manager job.
We exercise plenary review over an order granting summary judgment, and apply the same standard the lower court should have applied. Showalter, 190 F.3d at 234. A federal court should grant summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). In making this determination, “a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party’s favor.” Showalter, 190 F.3d at 234 (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir.1994)).
In ADEA cases, the court applies a “slightly modified version” of the evidentiary framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Showalter, 190 F.3d at 234 (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir.1997)) (en banc). Cf. O’Connor v. Consol. Coin Caterers, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (assuming, without deciding, that the McDonnell Douglas framework applies to ADEA cases). Thus, a plaintiff bears the burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. Turner v. Schering-Plough Corp., 901 F.2d 335, 341 (3d Cir.1990); Showalter, 190 F.3d at 234. To establish a prima facie case of discrimination under the ADEA — a task not intended to be onerous, Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.1995) — a plaintiff must demonstrate that (1) she was 40 years of age or older at the time the action occurred; (2) she suffered an adverse employment action; (3) she was qualified for the job from which she was terminated; and (4) she was replaced by a sufficiently younger person, creating an inference of discrimination. Showalter, 190 F.3d at 234.
If a plaintiff succeeds in establishing a prima facie case, the burden of production (but not of persuasion) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee’s rejection. Turner, 901 F.2d at 341; Showalter, 190 F.3d at 235. Should the defendant fail, judgment should be entered for the plaintiff. Showalter, 190 F.3d at 235. If the defendant does carry this burden, however, the burden of production shifts back to the plaintiff to summon evidence “from which a fact finder could reasonably either (1) disbelieve the employer’s articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer’s action.” Id. (citations omitted). Opposing a motion for summary judgment, a plaintiff need not present evidence that the employer’s proffered reason was false and that discrimination was the real reason, but may prevail by either discrediting the employer’s proffered reasons, either circumstantially or directly, or by providing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Id. at 234 (citations omitted); see also Torre v. Casio, Inc., 42 F.3d 825, 830 (3d Cir.1994) (affirming this standard at the summary judgment phase) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994)).
*184 Here, the District Court’s analysis with respect to whether Ms. Williams presented a prima facie case was in error. While the analysis initially focused on Ms. Williams’s burden of producing evidence of pretextual motive, the District Court ultimately concluded that Ms. Williams did not produce sufficient evidence of an adverse employment action, which is the second element required to establish a prima facie case. In essence, the District Court adopted the Church’s argument that Ms. Williams “voluntarily resigned” from her position, despite the clear assertion in Ms. Williams’s motion papers that she was “fired.” R. at 40, 44. Then, later in its analysis of the fourth prong, the District Court essentially re-addressed the adverse action issue by reasoning that Ms. Williams could not have been “replaced” by a substantially younger person because her position was eliminated (i.e., there was no “replacement” because there was no empty position to fill). To justify this reasoning, the District Court noted that Father Pribonic, in the same letter in which he confirmed to Ms. Williams that her position was being eliminated, invited her to apply for the new office manager position, which she did not do. R. at 27. The District Court then pursued two avenues that we believe have no determinative roles in the analysis at this point, namely, whether Ms. Williams was terminated or voluntarily resigned (given that she ostensibly was invited to apply for the new job) and whether it would have been futile for her to apply for the new job.
We see the issue of “adverse employment action” much more simply. Ms. Williams’s ADEA claim rests upon her termination, and the elimination of her job, which was accomplished in her first encounter with Father Pribonic. Whether a jury may consider probative of some issue, one way or the other, the parties’ disagreement with respect to the significance of the subsequent invitation that Ms. Williams apply for the new position (and her failure to do so) does not alter the fact that she was terminated from her job.
Ms. Williams asserts that when Father Pribonic initially approached her about the elimination of the parish secretary position, he raised for discussion or consideration her age and potential retirement. R. at 88, 108. She claims that at that first meeting, although Father Pribonic mentioned the new position, he did not extend an invitation to her to apply for the position. R. at 83. According to Ms. Williams, there was no discussion at that time about the Church’s need to economize or reduce personnel for any similar reason. Indeed, she testified that she asked Father Pribonic whether he was trying to get rid of her, R. at 88, while Father Pribonic denies being asked that question. R. at 101. He asserts that by the time he met with Ms. Williams he had already decided to eliminate her job. R. at 100. The parties’ differing accounts of this aspect of their meeting does not undermine our conclusion that if the District Court had considered this evidence in the light more favorable to Ms. Williams rather than the interpretation more favorable to the Church, Ms. Williams’ satisfaction of her burden to present a prima facie case would have been clear. Ms. Williams presented evidence that (1) at age 64, she was a member of the protected class, (2) she was terminated from her position as office secretary and for that reason suffered an adverse action, (3) she was qualified for the job of office secretary, and (4) she was replaced in the performance of her previous duties by Ms. Heaps, who is significantly younger than Ms. Williams. Thus, the District Court’s granting of the Church’s motion for summary judgment on this point was in error.
Because we conclude that Ms. Williams presented sufficient evidence to *185 establish a prima facie case, we must next consider whether the District Court also erred in concluding that there was no evidence on the record that would support a reasonable jury finding pretext. The Church argues that its decision to consolidate the two positions was motivated by considerations of economics and efficiency, considerations which may prove to be legitimate in the final analysis, but which are at this point open to reasonable dispute. Ms. Williams suggests that Father Pribonic’s statements during their first meeting about her age and his raising the possibility that she might retire provide sufficient evidence of discriminatory animus to undermine the legitimacy of the after-the-fact stated reasons for the job elimination. Indeed, a jury may conclude that these reasons may well only have suggested themselves once Ms. Williams’s “retirement” appeared to Father Pribonic to be imminent. Ms. Williams further argues that by improperly discounting such statements by her superior, which are part of the record, the District Court improperly substituted its own judgment for that of the jury.
The District Court did not address at all the alleged statements made by Father Pribonic about Ms. Williams’s age and the possibility that she might retire (nor, for that matter, did the District Court acknowledge the parties’ dispute over whether Father Pribonic or Ms. Williams first raised the topics of age and retirement). Rather, the District Court assumed the reasonableness of the Church’s purported reasons of efficiency and economics for consolidating the two positions without a single citation to the record.
Given the burden shifting analysis discussed above, and recognizing that Ms. Williams must only either discredit the Church’s proffered reasons or adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action, we conclude that there are disputes of fact which should be addressed by a fact-finder because there is sufficient record evidence from which that fact-finder reasonably could conclude that the Church’s efficiency/economics argument is, in fact, pretextual.[4]
Therefore, even though in the final analysis and after observing the key parties *186 testify, the jury may find Ms. Williams’s claim unpersuasive, at this juncture we see enough of a genuine dispute on sufficiently material facts to permit a jury to resolve this case, and we will reverse the entry of summary judgment for the employer.

. The District Court referred the case to a Magistrate Judge who prepared a Report and Recommendation urging summary judgment in favor of the Defendant Church. The Report and Recommendation was adopted by the District Court without modification.

. Although Ms. Heaps was 47 years old, and, therefore, also a protected employee under the ADEA, Ms. Williams may still bring a claim pursuant to the ADEA as long as the replacement employee was "substantially younger" than her. See O’Connor v. Consol. Coin Caterers, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). In Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231, 235-36 (3d Cir.1999), this Court relied upon O’Connor to hold that the "sufficiently younger” category option applies to “reduction-in-force” cases under the ADEA as well as to non-reduction-in-force cases.

. The Magistrate characterized this as a “failure to retain” case, Report and Recommendation 1, and seemed to consider Ms. Williams's failure to apply for the newly created position fatal to her claim. Id. at 2, 10-14.

. Father Pribonic testified that the Church was experiencing financial problems in May 2003, specifically with respect to "increasing overhead.” R. at 109. However, he testified that there was no financial emergency, and the parish’s financial situation was no worse than at any other time. Id. He also testified that "given the small space of the area where the offices are located, it would be more efficient to have one person handle all parts of the operation in the office." R. at 100. As to the hiring of Ms. Heaps as office manager, Ms. Heaps testified that she had "a couple informal conversations” with Father Pribonic about the position, which she would consider an “interview,” but that she did not complete an application or submit any documents to be considered for the position. R. at 30.
Ms. Williams also submitted evidence that, despite Father Pribonic’s intent to have only one person fill a consolidated position of office manager, for the sake of efficiency, Mary Tracey, another employee of the Church, worked in the rectory from around September 2003 through approximately October or November 2003. R. At 223. Ms. Tracey fulfilled many of the office manager's responsibilities, such as answering phones, scheduling masses and "just anything that anybody else would have done when they were there.” R. at 188. Thus, although the Church intended to consolidate two positions into one, Ms. Williams offered some evidence that suggests that the consolidated position still required two people to perform all of the required tasks. Moreover, the evidence is such that a jury could conclude that whatever need for efficiency there may have been, it had certainly existed for quite some time and may only have come to the fore when Ms. Williams's "retirement” did not proceed according to plan. This Court offers no comment upon *186 these competing accounts, other than to conclude that it was — and is — up to the jury to judge the efficacy of Father Pribonic’s stated reasons for terminating Ms. Williams and whether the termination constituted age discrimination.