AMBRO, Circuit Judge,
dissenting in part.
This case presents unfortunate circumstances in which a dedicated Church employee felt that she was unjustly let go because of her advancing age. However (and despite my belief that summary judgment is granted too often), I cannot agree with the majority that Ms. Williams has established the disputed issues of material fact necessary to defeat summary judgment and warrant a jury trial. I do agree with the majority that the District Court erred in its employment-discrimination analysis, but not because it stepped into the jury’s collective shoes. In this context, I would affirm.
The principal problem is that the District Court collapsed the various stages of the McDonnell Douglas burden-shifting framework into a single tier. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Specifically, it intertwined the issue of Ms. Williams’s failure to apply for the new position with the issue of her ability to show that the Church’s proffered reasons for consolidating two jobs were pretextual. The Court concluded that neither the elimination of Ms. Williams’s position nor the failure to hire her for the new position was an adverse employment action because the Church’s decision to consolidate, and thus eliminate Ms. Williams’s position, was the result of legitimate business concerns. Essentially, the Court juxtaposed two separate analyses under the McDonnell Douglas framework: the prima facie stage, see Maj. Op. at 183 (citing Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 234 (3d Cir.1999); Turner v. Schering-Plough Corp., 901 F.2d 335, 341 (3d Cir.1990)), and the pretext stage, see Maj. Op. at 183-84 (same). On review, I consider each stage separately, as does the majority. But, unlike the majority, separating those two inquiries does not lead me to “discern too many” — or any — “material factual disputes,” Maj. Op. at 182, regarding either inquiry such that we must send this case back for a jury trial.
First, I “see the issue of ‘adverse employment action’ ” even “more simply” than does the majority.[5] I emphasize the principle that, typically, discrimination claims are easily made out. See, e.g., Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.1995) (“[T]he prima facie case under the McDonnell Douglas-Burdine pretext framework is not intended to be onerous.”) (citations omitted); Weldon v. Kraft, 896 F.2d 793, 798 (3d Cir.1990) (“The framework set forth in McDonnell Douglas ... was never intended to be rigid, mechanized or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.”) (internal citations omitted); see also Idahoan Fresh v. Advantage *187 Produce, Inc., 157 F.3d 197, 204 (3d Cir. 1998) (noting that we must construe remedial statutes liberally). Therefore, in the face of doubt as to whether Ms. Williams meets the requirements for each prong, we would come down in her favor.
Here, there is no doubt. Only the second prong is at issue — whether Ms. Williams suffered an adverse employment decision. As the majority notes, Maj. Op. at 182 n. 2, we have held that reduction-in-force actions suffice to meet the requirements of the adverse employment decision prong when, as here, the employer has retained a similarly situated employee who was sufficiently younger to create an inference of age discrimination. See Anderson v. Consolidated R.R. Corp., 297 F.3d 242, 250 (3d Cir.2002); Showalter, 190 F.3d at 234-35. Because Ms. Williams’s position was eliminated through a reduction-in-force decision, I conclude along with the majority — though as a matter of law, for which issues of disputed fact as to the reasons for that elimination are irrelevant — that the District Court’s grant of summary judgment on this point was incorrect.[6]
Second, I disagree that material issues of disputed fact persist to defeat summary judgment at the pretext stage. See Maj. Op. at 181-83. The majority bases its opinion on a single issue: “whether — and, if so, when and to what degree of significance— an offer was extended to Ms. Williams to apply for the newly created office manager job.” Maj. Op. at 183. There is no dispute that Father Pribonic invited Ms. Williams to apply for the new position; the record clearly shows that he did. See App. at 27 (letter stating that “[a] new position of Parish Office Manager is being created and you are invited to apply for the same”). Thus, the majority cannot base its conclusion on the notion that there was a question as to whether Ms. Williams received an offer to apply.
The only dispute on this point is when Father Pribonic first made this invitation — at their first meeting, see id. at 86, 100-01, or by letter, id. at 27. But the timing does not determine the outcome because it is not a material issue to the claim. Neither does whether she took the invitation to heart. That is, if, by asking “to what degree of significance” she received the invitation to apply, the majority means to suggest that Ms. Williams’s failure to apply may support her discrimination claim, this suggestion seems unfounded. As the District Court noted, the failure to hire Ms. Williams for the new position was not an adverse employment action because, once she was no longer employed by the Church, its failure to hire her — especially when she did not apply for the position — did not affect her employment situation. See Becker v. Mack Trucks, Inc., 281 F.3d 372, 382 (3d Cir.2002) (“[A] failure to hire does not amount to a circumvention of promised benefits because job applicants who have yet to be hired have not been promised any benefits. In fact, we have held that [the term] discriminate ... is limited to actions affecting the employer-employee relationship.”) (internal citations and quotation marks omitted). In sum, regardless of the reasons in this record for Ms. Williams’s reluctance to apply for the new position after affirmatively being invited to do so, it is undisputed that she did not apply. By analogy to Becker, 281 F.3d at *188 382, the failure to apply bars her from being able to make out an employment discrimination claim on that basis.
The only material fact that I might consider possibly to be in dispute is whether the Church presented sufficient evidence to support a legitimate, nondiscriminatory reason that it consolidated positions out of economic and efficiency concerns. The majority suggests that it did not. Maj. Op. at 185 (“[T]he District Court assumed the reasonableness of the Church’s purported reasons of efficiency and economics for consolidating the two positions without a single citation to the record.”). But here too, I think the Church met its burden as a matter of law, as Ms. Williams provided no evidence to suggest that the proffered reason was pretextual.
Under McDonnell Douglas, once Ms. Williams has established a prima facie case, as we agree that she has, “the burden of production (but not the burden of persuasion) shifts to the [employer], who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision.” Kautz v. Met-Pro Corp., 412 F.3d 463, 465 (3d Cir.2005) (internal citations, brackets, and quotation marks omitted); Showalter, 190 F.3d at 235; Turner, 901 F.2d at 341. We may consider Father Pribonic to be a representative of the Church who is knowledgeable about its financial situation. Accordingly, his testimony that there was increasing overhead (though admittedly, no financial emergency), App. at 100, 109, may be taken to satisfy the Church’s burden of production.
His testimony would of course be subject to doubt upon Ms. Williams’s ability to point to “some evidence, direct or circumstantial,” that could cause a reasonable factfinder to disbelieve the proffered reason or give rise to an inference that the reason is more likely pretextual for actual discriminatory motives. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994).[7] The essential element at this stage is the requirement to produce “some evidence” for the inference. But Ms. Williams produced no evidence to satisfy her burden. For example, she made no request to review the Church’s financial records. Absent the production of evidence, we cannot conclude that Ms. Williams has satisfied her burden to prevail on the pretext stage.
The majority suggests that evidence exists in the record to make the requisite demonstration of discriminatory animus. For example, it notes that Ms. Williams may have demonstrated pretext by showing that a third employee, Mary Tracey, continued to work at the Church for some months after the position-consolidation. Maj. Op. at 185-86 n. 4. The suggestion is that this fact may give rise to an inference that Father Pribonic may not have been truthful in his assertions that economic and efficiency concerns drove his decision to eliminate Ms. Williams’s position. But the majority does not mention that Ms. Tracey previously worked at the Church on Fridays when Ms. Mary Ann Heaps (who filled the new position) could not. (Ms. Heaps worked four days per week and Ms. Tracey worked the fifth day. App. at 187-88.) She continued to work in that capacity and as a cleaner for approximately one year after Ms. Heaps was *189 hired. App. at 223. Alone, that information would scarcely lead a reasonable fact-finder to conclude that the Church’s efficiency reason was pretextual because there is no doubt that the Church did reduce two separate full-time office positions to a single full-time position plus a possible additional one-day-per-week employee.
If “[t]he core of this case concerns the interplay of the evidentiary burdens borne by the parties with the summary judgment standards,” Maj. Op. at 182, I believe that Ms. Williams has not fulfilled her evidentiary burden at the pretext stage. If this is true, it would be an understatement to say that “a jury may eventually agree with the District Court[ ]....” Maj. Op. at 182. More pointedly, without the existence of disputed material facts, I believe that summary judgment in favor of the Church was indeed appropriate. Accordingly, though I do not agree with all its reasoning, I would affirm the District Court’s judgment, and thus respectfully dissent.

. The majority views as relevant to the District Court’s application of the summary judgment standard the dispute between Ms. Williams and Father Pribonic concerning what transpired at their first meeting. I disagree. In my view, Ms. Williams established her prima facie claim as a matter of law, and the facts surrounding the events leading up to the elimination of her position are irrelevant.

. On this issue, I disagree with the majority that “whether Ms. Williams was terminated or voluntarily resigned” has “no determinative role[] in the analysis” at the prima facie stage. The involuntary termination constituted prong two of the prima facie case. This is consistent with Ms. William’s claims. See Appellant’s Br. at 20 (noting that her claim is not one of constructive discharge, but that the elimination of her job was a discharge that constituted an adverse employment action).

. Fuentes, the case setting out the standard in our Circuit, provides that to prevail at the pretext stage an employee must be able to point
to some evidence, direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer’s action.
32 F.3d at 764; see also Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir.1996) (en banc).