NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3132

_____

WILLIAM RICHTER,
                                        Appellant

v.

DUQUESNE UNIVERSITY OF THE HOLY SPIRIT;
JAMES MILLER
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:23-cv-00550)
District Judge: Honorable Christy Criswell Wiegand
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on October 23, 2025

Before: PORTER, FREEMAN, and CHUNG, *Circuit Judges.*

(Filed: January 27, 2026)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

William Richter sued his former employer, Duquesne University, for age discrimination and retaliation under federal and Pennsylvania law. The District Court granted summary judgment for Duquesne. Because we conclude that Richter has not established a prima facie case for either age discrimination or retaliation, we will affirm the District Court's grant of summary judgment.

I

A

William Richter was a gift officer in the advancement office at Duquesne University, a private Catholic college, from 2015 until he was terminated on August 17, 2022. The university hired him when he was 55 years old, promoted him twice (at 60 and 61 years old) then fired him at 62 years old.

Since July 2021, James Miller (age 57 in August 2022) led Duquesne's advancement office. In early 2022, Miller restructured the advancement office at the request of the university president. The restructuring included reallocating gift officers' portfolios. At least one donor in Richter's 431-donor portfolio was transferred to another portfolio managed by gift officer Melissa Krebs, who was younger than Richter. In his deposition, Richter admitted that 431 donors was not a reasonable number for a gift officer to handle.

When Krebs secured a $50,000 commitment from the transferred donor, Richter accused her of stealing his donor and lying to the donor. In March 2022, Richter

2

complained to Miller and then filed a complaint with the university human resources department. That complaint did not reference age. Richter filed a second human resources complaint that he emailed to two human resources employees. Although the second complaint form did not mention age, the accompanying email said that Richter planned to file an age discrimination complaint if he did not receive credit for the $50,000 gift. The university's investigative report resulting from Richter's complaints does not mention age discrimination. Richter never heard Miller make any comments related to age, and Miller says that, although Richter's second complaint was shared with him, he never saw the email referencing age discrimination.

Around the time Richter filed his human resources complaints, he solicited a seven-figure, deferred, revocable gift in exchange for an unapproved agreement that granted the donor perpetual naming rights to a university center. Richter's solicitation violated university policies that required this type of gift to be irrevocable and approved by the university president. Separate from this incident, Richter had several other performance and conduct issues: he sent a sexually-explicit text message to the provost; he jeopardized a donor relationship by failing to keep a dean informed; he failed to resolve a significant mathematical error that resulted in a monetary shortage; and he communicated callously with coworkers. According to the university, Richter's policy violation regarding naming rights was the last straw that led Miller to terminate Richter in August 2022.

B

In March 2023, Richter filed suit against the university and Miller, alleging age

3

discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). The District Court granted summary judgment for the university on October 15, 2024, and held that Richter had not made a prima facie case for either claim. Richter timely appealed.

## II

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367(a). We have jurisdiction under 28 U.S.C. § 1291.

This Court reviews the District Court's grant of summary judgment de novo, applying the same standards and presumptions as the District Court. *Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213, 225 (3d Cir. 2020). We will affirm if "there is no genuine dispute of material fact and [ ] the moving party is entitled to judgment as a matter of law." *Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024).

## III

We analyze age discrimination and retaliation claims premised on circumstantial evidence under the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). First, "the employee bears the initial burden of establishing a *prima facie* case" of age discrimination or retaliation. *Id.* at 300; *see also Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002). Second, if the employee clears step

---

[1] We analyze claims brought under the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act coextensively. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 192–93 (3d Cir. 2015).

one, "the burden of production shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action." *Marra*, 497 F.3d at 300. Third, if the employer clears step two, the employee must show that the employer's explanation was a pretext for discrimination or retaliation. *Id.* The District Court held that Richter's claims fail at step one. We agree.

A

Under the ADEA, it is unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, a plaintiff must establish that he (1) was at least forty years old, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) suffered the adverse employment action under circumstances that support an inference of discrimination. *Anderson*, 297 F.3d at 249 (citing *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235 (3d Cir. 1999)).

The plaintiff can satisfy the fourth element by demonstrating that "the employer retained someone similarly situated to him who was sufficiently younger." *Id.* at 250. Two employees are similarly situated only if they share in relevant aspects of employment, i.e., are part of the same department or have comparable duties. *See, e.g.*, *id.*; *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004) ("In order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace.").

The parties dispute only this fourth element. Richter argues that the District Court

erred by holding that he was not treated less favorably than similarly situated younger employees. Duquesne argues that neither of Richter's proffered comparators are similarly situated. Because we agree that the two employees Richter identified are not similarly situated, we will affirm.

Richter alleges that the university president treated him less favorably than Miller with respect to certain sexual harassment policies. Richter points out that both he and Miller were accused of sexual assault or harassment years ago, but Miller remains employed while he was terminated. Miller was 57 years old (and only five years younger than Richter) when Richter was terminated. Even if a five-year age difference is enough for an adverse inference that Miller was sufficiently younger, it is clear from the record that Richter and Miller are not similarly situated because Richter violated *multiple* policies, including the naming policy—not just the sexual harassment policy.

Another key difference between the two employees is that Miller leads the advancement department and had supervisory authority over Richter, but Richter was a lower-level subordinate. *See Monaco*, 359 F.3d at 305 (refusing to compare a higher-level employee with lower-level employees for purposes of establishing the fourth element of an age discrimination claim).

Richter also alleges that he was treated less favorably than Krebs, "a younger employee who . . . left the University," with respect to the donor reassignment and the treatment they each received for allegedly violating university policies. Joint Appendix ("J.A.") at 121. But here too, the employees are not similarly situated. Krebs made a misleading statement to a donor that Richter "ha[d] shared some of [his] thoughts" with

6

her. J.A. at 4. Although Richter did not speak directly with Krebs about the donor, he did record his thoughts in the university contact management system, which was open to all gift officers and which Krebs reviewed. The university determined that while Krebs's comment was misleading, it did not violate policy. It also did not substantively affect either the donor or the university; the donor still made the donation.

Richter, on the other hand, violated two policies by soliciting a seven-figure, deferred, revocable gift that impermissibly granted perpetual naming rights to a university center. Unlike in Krebs's situation, the donor was "absolutely devastated" that the university had to rescind the naming rights Richter had promised. Supplemental Appendix at 4. No reasonable juror could conclude that Richter's actions were comparable to Krebs's misleading statement.

Because Richter has not established that he was similarly situated to Miller or Krebs, he has not met his burden to establish a prima facie case of age discrimination.

B

The ADEA and the PHRA also make it unlawful for an employer to retaliate against an employee who "made a charge" of age discrimination. 29 U.S.C. § 623(d); 43 Pa. Cons. Stat. § 955(d). To establish a prima facie case of retaliation, a plaintiff must establish that (1) he engaged in a protected activity, (2) the employer took an adverse action after or contemporaneous with that protected activity, and (3) there was a causal connection between the protected activity and the employer's adverse action. *Marra*, 497 F.3d at 300.

The parties dispute the causation element. Richter argues that the District Court

7

erred by holding that there was no causal connection between the timing of his age discrimination claim and his termination. He also argues that Miller knew of the age discrimination complaint and waited for a good excuse to terminate him. The university asserts that its termination of Richter was based on his multiple policy violations.

We agree with the District Court that there is no causal connection because of the length of time between Richter's protected activity and termination. First, there was a near three-month gap between Richter's email alleging age discrimination and his termination.[2] *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding that a three-week gap is not unusually suggestive of a retaliatory motive). Within that timeframe, the university discovered that Richter violated two policies when he solicited the seven-figure, deferred, revocable gift granting perpetual naming rights. The record, even construed in the light most favorable to Richter, shows that Miller terminated Richter for his violations of those policies and not on account of his age. Although the parties dispute whether Richter's termination was pretextual, and whether Miller even knew of the age discrimination complaint prior to terminating Richter, we need not decide those issues because of the months-long gap and intervening events. Because Richter has shown no causal link, he has not met his burden to establish a prima facie case of retaliation.

\*　　\*　　\*

We will affirm the District Court's order granting summary judgment.

---

[2] Richter argues that the gap was less than a month, but this argument is not supported by the record. Even if it were, that length of time is also not unusually suggestive.