**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3669
_____

MELVIN BRITTON,
                    Appellant

v.

OIL CITY AREA SCHOOL DISTRICT
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 1-16-cv-00186)
District Judge: Hon. Barbara Jacobs Rothstein
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 9, 2018
_____

Before: SHWARTZ, NYGAARD, and RENDELL, Circuit Judges.

(Filed: August 6, 2018)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiff Melvin Britton appeals the District Court's order granting summary judgment in favor of Defendant Oil City Area School District (the "School District") on his claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. (the "ADEA"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951 et seq. (the "PHRA").  We agree with the District Court and will affirm.

I

In 2006, the School District hired Britton as the Director of Building and Grounds. According to his job description, his "primary function . . . [was] the supervision and direction of all maintenance, housekeeping (custodial), grounds personnel and administrative secretary in order to keep all District facilities in a clean and comfortable environment."  App. 550.  The job description identified fifteen responsibilities and twenty-seven "related responsibilities."  App. 550, 576.  The first responsibility is "[s]upervis[ing] maintenance and housekeeping employees and their work while providing for the daily maintenance and housekeeping of all District buildings and grounds per their job description.  Monitor and evaluate the performance of all maintenance and housekeeping personnel."  App. 211.  The second responsibility is "[a]ssur[ing] timely processing and response to requested work orders."  App. 211. Britton initially testified that he spent seventy-five percent of his time on the first responsibility and twenty-five percent on the second responsibility, although he later noted that "it's hard to say 75 percent and 25 percent . . . because of what the responsibilities are."  App. 75-76.  He explained, however, that the supervision of maintenance and housekeeping employees "coincides with the rest" of the responsibilities

2

listed in the job description. App. 75. From 2006 to 2011, he supervised twenty-seven employees and from 2011 onwards, he supervised twenty-five employees, twenty of whom were custodial employees.

Beginning in 2012 or 2013, the District Superintendent asked Britton to determine whether it would be cheaper for the School District to subcontract custodial and maintenance operations. This inquiry resulted from the School District's budget concerns due to, among other things, a drop in enrollment, a declining real estate tax base, and a shift in funding from the Commonwealth of Pennsylvania to local school districts. Britton received quotes for custodial and maintenance operations that showed the School District could save $362,335.97 annually by outsourcing its custodial services, but that it was cheaper to retain its maintenance personnel instead of outsourcing their duties. As a result, the School District entered into a contract with Facilities Maintenance Systems ("FMS") to provide custodial services, and all twenty of the School District's custodial employees were furloughed.

The School District subsequently eliminated Britton's position to further reduce expenses. Britton was then approximately sixty years old. The School District did not hire another Director of Building and Grounds, but reassigned some of Britton's nonsupervisory duties to two maintenance employees: Rick Downing, who is two years younger than Britton, and Brian Thompson, who is twelve years younger than Britton. They received additional stipends for the extra work, but they believed the extra pay did not sufficiently compensate them for their new duties. Thompson was also asked to obtain an underground tank certification and to perform tasks Britton handled with

3

respect to the School District's underground storage tank.  Thompson received the

certification but refused to perform these tasks because he believed they "were in excess

of what he felt was his current position."  App. 583 (alterations omitted).  In addition,

following Britton's termination, two employees in the maintenance department began to

receive their daily work assignments from Susan Asel, the FMS custodial supervisor.

Britton sued the School District, alleging it terminated him because of his age, in

violation of the ADEA and the PHRA.  In its motion for summary judgment, the School

District argued that it had terminated Britton's employment as part of a reduction in

workforce due to budgetary concerns.  The District Court concluded that Britton had

established a prima facie case for age discrimination, but he did not show that the School

District's legitimate, non-discriminatory reasons for terminating his employment were

pretextual, and granted the School District's motion.  Britton appeals.

## II[1]

Britton seeks relief under the ADEA and the PHRA, which are both governed by

the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792,

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the grant of summary judgment is plenary.  Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013).  We apply the same standard as the District Court, viewing facts and making reasonable inferences in the non-movant's favor.  Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  Kaucher v. Cty. of

4

802 (1973). See Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir. 1998).

Under the McDonnell Douglas three-step test, the plaintiff must first establish a prima facie case of age discrimination by showing "(1) that he was at least forty years old, (2) that he was fired, (3) that he was qualified for the job from which he was fired," Fakete v. Aetna, Inc., 308 F.3d 335, 338 n.3 (3d Cir. 2002) (citation omitted), and, where, as here, the plaintiff is terminated during a reduction in force, (4) "the employer retained unprotected workers," Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 234 (3d Cir. 1999) (citation and internal quotation marks omitted). "Once the plaintiff establishes a prima facie case, 'the burden then . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's'" termination. Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (quoting McDonnell Douglas, 411 U.S. at 802). If the employer meets its burden, "[t]he plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). "[T]hroughout this burden-shifting paradigm[,] the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

The School District concedes that Britton established a prima facie case of age discrimination, and Britton concedes that the School District articulated a legitimate, non-discriminatory reason for firing him. Thus, the only issue on appeal is whether Britton

Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

5

identified an issue of fact as to whether the School District's proffered non-discriminatory reasons for eliminating his position are a pretext. To show pretext, generally the employee "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (citation and internal quotation marks omitted). A plaintiff must proffer evidence "that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). The employee "must show[] not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit All. Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc).

Britton has not shown that the School District's reasons for eliminating his position were pretextual. First, Britton disputes the School District's view that his own testimony concerning the amount of time he supervised subordinates justified his termination when twenty of his twenty-five subordinates were fired. He downplays the significance of his testimony that "[s]upervision and daily operation would take up about 75 percent of the day," App. 74, based upon his later assertion that "it's hard to say 75 percent and 25 percent . . . because of what the responsibilities are," App. 75-76. While he seems to assign different percentages to different duties, Britton acknowledges that his supervision of maintenance and housekeeping employees "coincide[d] with the rest of"

6

his responsibilities.[2] App. 75-76. This underscores that most of his time was dedicated to supervision and bolsters the School District's justification for terminating his employment as a supervisor when eighty percent of the employees he supervised had been fired.

Second, Britton argues that his duties were performed by younger in-house employees following his termination, which showed he was terminated because of his age and not because his duties were outsourced. The undisputed record does not support that inference. The decision to terminate Britton's employment and redistribute some of his nonsupervisory duties to other employees is consistent with the School District's claim that his position was eliminated as part of an effort to reduce costs. That the remaining employees were younger is not probative of the School District's motive.

Third, Britton argues that following his termination, there were certain duties that no School District employee was qualified to perform, and so the School District had to

_____

[2] The full exchange is as follows:

Q. All right. Well, to that end, then, are you still sticking with 75 percent of the time spent on responsibility No. 1, the supervision of maintenance and housekeeping employees?

A. I think that all coincides with the rest of them, actually. Because when you're supervising them, you're also dealing with bid specification, the labor contracts, guidelines, electrical systems, fire systems, all of that. That's what I'm saying, it's hard to say 75 percent and 25 percent, you know, because of what the responsibilities are.

App. 75-76.

7

train existing employees, such as Thompson, to perform these duties. Again, the fact that School District employees had to receive training to handle nonsupervisory tasks Britton had performed does not demonstrate the School District's decision to eliminate his supervisory position as part of a cost-saving overhaul was pretextual.

Finally, Britton argues that the fact that two "general laborers" in the maintenance department received their daily work assignments from the FMS custodial supervisor meant they were "presumably doing custodial duties" and that it is "simply implausible that a rational employer would, after eliminating in-house custodial services, retain two employees who continued to do custodial work while terminating the employee who had ongoing, long-term relationships with vendors and outside contractors, as well as expertise and certification not possessed by any other employees." Appellant's Br. 14-15. Even if this were an apt observation, "[t]he question is not whether the employer made the best, or even a sound, business decision." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 647 (3d Cir. 2015) (quoting Keller, 130 F.3d at 1108-09). Instead, to preclude summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could . . . infer that the employer did not act for the asserted non-discriminatory reasons." Fuentes, 32 F.3d at 765 (internal citations, alterations, quotation marks, and emphasis omitted). The record does not allow for such an inference. Rather, it amply demonstrates that the School District took a variety of steps to address its budgetary concerns, including terminating Britton.

Thus, Britton has failed to demonstrate that the School District's budgetary reason for eliminating his position was pretextual and thus the District Court properly granted summary judgment.

III

For the foregoing reasons, we will affirm.